(59 P.3d 1054)

No. 87,646

STATE OF KANSAS, *Appellant*, v. TREVOR J. CORBETT, *Appellee*.

Opinion filed January 3, 2003.

*Keith E. Schroeder*, district attorney, and *Carla J. Stovall*, attorney general, for appellant.

*Michael S. Holland* and *Michael S. Holland II*, of Holland and Holland, of Russell, for appellee.

Before KNUDSON, P.J., LEWIS, J., and BUCHELE, S.J.

KNUDSON, J.: In this interlocutory appeal, the State appeals the dismissal of a first-degree murder charge brought against the defendant, Trevor Corbett. At the conclusion of the preliminary hearing, the district court dismissed the case, concluding there was probable cause a felony had been committed but insufficient evidence presented to establish the crime was committed by Corbett. The State contends the court erred when it determined that the evidence was insufficient to establish probable cause under K.S.A. 2001 Supp. 22-2902(3).

Appellate jurisdiction is conferred upon this court pursuant to K.S.A. 2001 Supp. 22-3602(b)(1).

That someone murdered Crystal Casey during the late evening of June 25, 2000, or the early morning hours of June 26, 2000, is established by the evidence. Less conclusive is whether the defendant, Trevor Corbett, committed the crime.

Before considering the evidence presented, it is helpful to note the police initially considered both of Crystal Casey's ex-husbands, Shane Casey and Trevor Corbett, as suspects. At the preliminary hearing, two witnesses were inconsistent in their respective identifications as to whether it was Shane Casey or Corbett at the crime scene. In addition, DNA evidence was not overwhelming, and Corbett's fingerprint at the crime scene was susceptible of an innocent explanation. All of these circumstances contributed to the district court's decision not to order Corbett bound over for trial.

## Decision of the District Court

In its decision, the district court stated:

"In my analysis of the evidence that's been presented in the case, I've determined that the strongest evidence that the State has presented is the testimony of James Newman, the Forensic Scientist with the KBI [Kansas Bureau of Investigation] Laboratory. Mr. Newman analyzed DNA discovered on Crystal Casey's fingernails. The results of the analysis eliminated a number of individuals. It did not eliminate Trevor Corbett as a contributor of that DNA. Mr. Newman further went on to testify that this was a partial profile, and that as a result of that, he gave statistics indicating, if I can state it correctly, that the scientific probability of selecting a match to the DNA that he identified was in a population of 2,481, there would be the scientific probability of finding a match. I can infer that taking it further that in a population of approximately 5,000 there would be a scientific probability of finding two that would match. In a population of 10,000 there would be a probability of finding four that would match. To put these numbers in proper perspective, Mr. Newman further testified that with a complete or full DNA profile, such as the one he found on the blood stains on Crystal Casey's clothes, that belonged, that he was able to identify that belonged to her; it was one in 50 billion. These are the numbers that DNA profilers apparently work with, in the billions. The partial profile that could not eliminate Mr. Corbett was one in 2,400. The KBI acknowledged that they had a weak profile, and sent it for further analysis to ReliaGene Laboratories. I recognize that the report from them was not admitted into evidence, but it was used in the examination of Mr. Newman, and it

certainly became clear that the analysis by ReliaGene Laboratories did not further narrow the possibilities.

"We then have Exhibit No. 20 that is the further, yes, that is the DNA analysis done by the Sedgwick County Regional Forensic Science Center. It is noteworthy in that report that in the swab taken from the neck, and this is where the pathologist testified was the location of the cause of death, manual strangulation in the neck, there was detected DNA from an unknown male contributor and Trevor Corbett was eliminated. It was not his. There was DNA detected from Crystal Casey's left elbow that did not belong to her. It was from an unknown male contributor. It was not from Trevor Corbett. There was DNA detected on Crystal Casey's upper right arm that may be contributed to Trevor Corbett. And if I understood that report correctly, that is one in 25, in a population of 25, there will be a match to that DNA.

"From analyzing evidence I have on the DNA, I find that the testimony of Mr. Newman alone, well, along with State's Exhibit No. 20, the analysis from Sedgwick County, the DNA testimony and evidence alone does not establish probable cause that Trevor Corbett committed a felony.

"Therefore, the Court looks to the other evidence. The first I looked at is the identification testimony of Jenny Williams and Bryan Miller of the man seen in the area of Crystal Casey's apartment. It cannot be a surprise to anyone I don't think that—the testimony of Ms. Williams is of highly questionable reliability and credibility. Within hours after Crystal Casey was discovered, both Ms. Williams and Mr. Miller identified someone other than Trevor Corbett and they stayed with that identification to the point where sworn testimony was taken in August of 2000. And Ms. Williams testified under oath not only, she not only testified that the person she saw was Shane Casey; she testified basically I know Trevor Corbett and it was not Trevor Corbett.

"The testimony I heard today from Sergeant Rayburn concerning Bryan Miller, only bolsters Bryan Miller's initial identification of Shane Casey. I am charged with judging at a preliminary hearing the credibility and reliability of witnesses' testimony. I find that the testimony of Ms. Williams and Mr. Miller do not bolster the State's case. The testimony detracts from the State's case. I don't think their identification that I heard involving Trevor Corbett is reliable.

"Further evidence I have is a fingerprint that was lifted from the eyepiece on the door, that it can be attributable, or is attributable in one of these exhibits to Mr. Corbett. It is clear from the evidence, we lack any evidence as to when the fingerprint was placed there. We know Mr. Corbett frequented that apartment. I guess finding his fingerprint on the eyepiece of the door, I do not find very incriminating.

"Without more, drawing all the inferences, drawing the inferences from the evidence in favor of the State, in my opinion, the best that can be said for the State's case is that there are numerous possible suspects and Trevor Corbett is one of them. The evidence does not sufficiently focus all of this evidence on Mr. Corbett and away from the others.

"Of the possible suspects, is there probable cause to believe that it was Trevor Corbett? I find the answer to that question, no. I believe the State's evidence has established the commission of a felony. The State's evidence falls short in establishing probable cause to believe Mr. Corbett committed that felony. And based upon that finding, I am—the case is dismissed without prejudice and Mr. Corbett is released from his bond."

## Standard of Review

In deciding whether the evidence presented at the preliminary hearing was sufficient to establish probable cause, our standard of review is de novo. *State v. Anderson*, 270 Kan. 68, 71, 12 P.3d 883 (2000). We must determine if there is probable cause to believe the defendant may have committed the crime charged. In order to prove probable cause, there must be evidence sufficient to cause a person of ordinary prudence and caution to conscientiously entertain a reasonable belief of the defendant's guilt. *State v. Huser*, 265 Kan. 228, 230, 959 P.2d 908 (1998).

In *State v. Bell*, 259 Kan. 131, Syl. ¶ 4, 910 P.2d 205 (1996), the court provided us with insight as to how the evidence must be evaluated by the district court:

"When evaluating evidence presented at a preliminary hearing, the judge must seriously consider the defendant's defense and pass judgment on the credibility and competency of both the State's and the defendant's witnesses. If there is a conflict in witness testimony that creates a question of fact for the jury, the preliminary hearing judge must accept the version of the testimony which is most favorable to the State."

## Discussion

### Identification Testimony

The district court found the identification testimony from Crystal Casey's neighbor, Jennifer Williams, was not credible. Williams testified she saw a man leaving Casey's apartment the night of the murder. The man walked past her and attempted to hide his face in some clothes he was carrying. Williams believed it was Corbett and thought it was unusual that he did not return her greeting, since she had grown up with him. She testified she told others that she had seen Corbett near Casey's apartment the night of the mur-

der. She said that she had conversations with friends and they convinced her that Corbett could not have been the murderer.

Williams testified she felt pressured to identify a person in the photographic lineup, so she selected Shane Casey, someone she did not know, because his picture was the only photo that contained a person "born in this century." She consistently testified that she told the police that the man she observed the night of the murder was wearing glasses and none of the men in the photos were wearing glasses. She explained she picked out Shane Casey because she believed she was helping the investigation by picking someone from the lineup.

Williams acknowledged she had previously testified to being 99 and almost 100 percent sure that Shane Casey was the man she observed the night of the murder. On cross-examination, Williams became flustered and hostile when she was impeached. She explained she selected Casey because he has a similar build and resemblance to Corbett. When finally shown a photograph of Corbett, she identified him as the person she had seen.

The district court also found Bryan Miller's identification of Corbett was not reliable. He testified he did not select a person the first time he was shown the photos; instead, he said he returned to the police station after speaking with Williams, who told him she selected the man who was standing outside in the picture. He then selected Shane. This testimony was directly contradicted by Sergeant James Rayburn, the police officer who conducted the lineup. Miller corroborated Williams' testimony that she identified Corbett the night of the murder.

Sergeant Rayburn testified that at the time Williams was shown the first lineup, she told him that she believed that the man she had observed leaving Crystal Casey's apartment was Corbett. He said she selected Shane Casey from the lineup and the lineup did not contain a photo of Corbett. He testified that neither Williams nor Miller were pressured to make a selection from the lineup.

The district court found the identification testimony of Williams and Miller was not credible. In rejecting their identifications of Corbett, the court found their testimony unreliable. The court stated its duty was to judge the credibility of witnesses testifying at

a preliminary hearing. We conclude the duty may not be as clear-cut as the district court believed.

In *State v. Jones*, 233 Kan. 170, 660 P.2d 965 (1983), the defendant was charged with two counts of aggravated battery. At the preliminary hearing, the court heard differing accounts as to what had occurred. The State's witnesses identified the defendant as the aggressor; the defendant's witnesses testified Jones acted in self-defense. In explaining his decision not to bind Jones over for trial, the judge stated:

" 'This is a very close case in the Court's opinion. Normally the duty at preliminary hearing is to hear the evidence and if it shows that a crime has been committed and that there is probable cause to believe the defendant committed the crime, the Court is to hold the person to answer the charge. The preliminary hearing is not a trial. It is not a rehearsal for a larger trial to the jury. Normally the Court does not judge the credibility of witnesses in a preliminary hearing. That is the problem in this case, that the testimony of Davis can be understood to be if truthful to make out a crime that he was not the aggressor and that he was attacked without cause when he was not doing anything that he didn't have a right to do. That much is obvious to everyone in the courtroom cannot be explained on the basis of the truthfulness of the other witnesses totally contradictory. All of the other witnesses put him in the forefront of a crowd which was menacing in one way or another the defendant and two of his companions. If that is true, Jones has a right to use reasonable force to protect himself from an imminent attack. To me, from the evidence I am not convinced that that isn't the truth. It may or may not be the truth; but from all the evidence I can't find that a crime was committed. If the State has additional evidence, they can refile this case; but based upon what I have heard, I am not going to send it to the District Court. I will discharge the defendant and dismiss the case.' " 233 Kan. at 171-72.

In concluding the district court erred, Justice Lockett explained:

"The magistrate at a preliminary examination has a duty not only to pass judgment on the credibility and competency of a witness, but may consider evidence of a defense. The defendant should not be discharged where evidence conflicts or raises a reasonable doubt as to the guilt of the defendant. Where there is a conflict in testimony, a question of fact exists for the jury, and the magistrate must draw the inference favorable to the prosecution. Where there is some doubt that the defendant failed to act in self-defense, he must be bound over for trial." 233 Kan. at 174.

In *State v. Chapman*, 252 Kan. 606, 847 P.2d 1247 (1993), the defendant was charged with aiding and abetting Porter and He-

berly's possession with intent to sell methamphetamine. The district court dismissed the charges against Chapman at the conclusion of the preliminary hearing. The State filed an interlocutory appeal contending Chapman should have been bound over to stand trial. In writing the opinion of the Supreme Court reversing the district court, Justice Allegrucci spoke at some length about the duty of a district court to weigh the credibility of witnesses at the preliminary hearing stage of a criminal proceeding. He stated:

"In the present case, the evidence at the preliminary examination was adduced by the State, and the bulk of it was the testimony of two convicted felons who may have hoped to lighten their own punishments by testifying against Chapman. It was the magistrate's duty to assess their credibility. If the reasoning of *Jones* is followed, the court would not require the magistrate to discharge Chapman due to doubts about the witnesses' credibility as long as the doubts did not obviate the appearance that he probably committed the felony with which he was charged. 233 Kan. at 173-74. The following statement of the applicable principle appears in *Jones*: 'At the preliminary examination when there is a conflict in testimony, a question of fact exists for the jury, and the magistrate must draw the inference favorable to the prosecution.' 233 Kan. 170, Syl. ¶ 4." 252 Kan. at 616.

As already noted, the purposes of a preliminary hearing are limited; a preliminary hearing is not a mini-trial. We understand the holdings in *Jones* and *Chapman* to mean that at a preliminary hearing the judge should not discharge the defendant due to doubts about the witnesses' credibility unless the testimony obviates the appearance that the defendant probably committed the felony.

In the present case, the district court completely rejected the testimony of both Williams and Miller upon the issue of Corbett's identification notwithstanding their respective explanations for confusion that were not implausible as a matter of law. We conclude this went beyond the assessment of credibility to be made by a judge at preliminary hearing and deprived the State of a reasonable evidentiary inference that Corbett committed the crime.

### DNA Evidence

The district court found that the "KBI acknowledged that they had a weak [DNA] profile." However, the KBI forensic chemist, James Newman, clarified that the profile was not weak, but partial. Newman explained the significance to be that the test was reliable

but statistical probabilities of a match were reduced. Apparently, the district court misunderstood the testimony and unduly minimized the KBI test results that had implicated Corbett.

Newman also explained the different testing procedures utilized by the KBI and those of ReliaGene. While it is true the ReliaGene genetic testing could not exclude both Corbett and Shane Casey, Newman correctly observed the ReliaGene testing did not eliminate either suspect as a donor. Conversely, the testing by the KBI of genetic material from Crystal Casey's fingernail clippings did eliminate Shane Casey as a donor, but not Corbett. As we understand Newman's testimony and the DNA testing results, there was a 1 in 2,481 chance Corbett was the minor DNA donor of the genetic material found in the fingernail clippings. In our opinion, this result merely sets the stage for the trier of fact at trial to consider and weigh the evidence; it should not have been unduly discounted at a preliminary hearing.

The DNA evidence was complex and inconclusive. But there was no DNA testing that demonstrated Shane Casey was the donor; conversely, there was DNA evidence linking Corbett to the body of Crystal Casey. We conclude the district court unreasonably disregarded the DNA evidence that was highly probative in determining whether there was probable cause Corbett committed the crime.

### Fingerprint Evidence

The State also introduced evidence of Corbett's fingerprint that had been lifted from the eyepiece from the front door peephole. While it is true that the date the fingerprint was left on the peephole cannot be determined because Corbett frequented the apartment, the location of the fingerprint indicates Corbett covered the peephole to prevent Casey from seeing who was outside her door. This evidence, when viewed from the State's position, is an important fact that can reasonably be used to show guilt. The court improperly found the fingerprint was not "incriminating."

## Summary

At Corbett's preliminary hearing, the State presented identifi-

cation testimony, DNA evidence, and fingerprints, all implicating the defendant. Although the evidence was not overwhelming, we believe it was more than adequate to support a finding of probable cause and to bind over Corbett for trial. We conclude the district court erred in finding that the evidence presented at the preliminary examination was insufficient to order Corbett bound over to stand trial for first-degree murder. We reverse the district court and remand for further proceedings consistent with this opinion.

Reversed and remanded with directions.