(154 P.3d 524)
No. 95,936

STATE OF KANSAS, *Appellee,* v. RYAN N. SHAW, *Appellant.*

Opinion filed March 30, 2007.

*Daniel C. Walter,* of Ryan, Walter & McClymont, Chtd., of Norton, for appellant.

*Justin A. Barrett,* assistant county attorney, and *Phill Kline,* attorney general, for appellee.

Before GREEN, P.J., ELLIOTT and MALONE, JJ.

GREEN, J.: Ryan Shaw appeals his conviction and sentence for felony driving under the influence of alcohol under K.S.A. 2006 Supp. 8-1567 as a third-time offender. First, Shaw argues that the trial court should have granted his motion to dismiss because the State failed to prove at the preliminary hearing that he had two prior convictions for driving under the influence of alcohol (DUI), a necessary element of felony DUI as a third-time offender. Because Shaw failed to include a record of the preliminary hearing, we cannot adequately review Shaw's argument. Moreover, even if the only evidence presented at the preliminary hearing of Shaw's two prior DUI convictions was a certified driving record that is contained as an exhibit in the record on appeal, this evidence was sufficient for purposes of preliminary hearing to establish probable cause that Shaw had committed a felony.

Next, Shaw contends that the trial court should have suppressed the results of his second breath test on the Intoxilyzer 5000 due to the officer's failure to comply with K.S.A. 8-1001(f) and (h) in giv-

ing the implied consent advisories. Nevertheless, we determine that results of the second test on the Intoxilyzer 5000 were properly admitted by the trial court because the officer adequately complied with K.S.A. 8-1001(f) and (h) in giving Shaw the implied consent advisories before Shaw submitted to the second test. Finally, Shaw argues that the results of the second breath test on the Intoxilyzer 5000 should have been suppressed as fruit of the poisonous tree of both the preliminary breath test and the inadmissible first test on the Intoxilyzer 5000. We disagree. The results from the second breath test on the Intoxilyzer 5000 were not fruit of the poisonous tree of either the preliminary breath test or the first test on the Intoxilyzer 5000. Accordingly, we affirm.

One early morning in June 2005, Trooper Douglas Reed stopped Shaw after he noticed that the right front headlight of Shaw's truck was not working. As Reed was attempting to stop Shaw, he saw Shaw drive over a curb and onto a sidewalk and nearly hit a sign post in a yard. After stopping Shaw, Reed smelled an odor of alcohol coming from inside the truck. In addition, Reed noticed that Shaw's eyes were watery and bloodshot. Reed asked Shaw to come with him to his patrol car while he wrote Shaw a warning for the headlight violation. While Shaw was in the patrol car, Reed smelled an odor of alcohol coming from Shaw. Reed asked Shaw if he had been drinking. Shaw stated that he had about four beers and that he had been at a social function.

Shaw agreed to undergo field sobriety testing. Reed testified that during the walk-and-turn test, Shaw exhibited four out of the eight clues of intoxication. According to Reed, Shaw failed the walk-and-turn test. During the one-leg stand test, Shaw showed no clues of intoxication. After performing the field sobriety tests, Shaw took a preliminary breath test.

Reed arrested Shaw for driving under the influence of alcohol and took him to the police department for further testing. Shaw submitted to a breath alcohol test on the Intoxilyzer 5000. The machine registered a .12 concentration of alcohol from Shaw's breath sample. Reed then realized that he had not given Shaw either oral or written implied consent advisories as required by K.S.A. 8-1001(f). Reed asked Shaw if he would submit to a second

breath alcohol test on the Intoxilyzer 5000. Shaw said that he would take the test. Reed then gave Shaw both the oral and written implied consent advisories under K.S.A. 8-1001(f). Reed again asked Shaw if he would submit to breath alcohol testing. Shaw agreed to perform the breath alcohol test on the Intoxilyzer 5000. The second test indicated a .109 concentration of alcohol.

Shaw was charged with felony driving under the influence of alcohol in violation of K.S.A. 2006 Supp. 8-1567(f) as a third-time offender. After a preliminary hearing, Shaw moved to dismiss the complaint. Shaw maintained that the State had failed to present sufficient evidence to show that he had two prior DUI convictions, a necessary element of a charge of felony DUI as a third-time offender. Alternatively, Shaw moved to suppress the results of both breath tests because of irregularities in the giving of the implied consent advisories. Moreover, Shaw argued that the preliminary breath test was an unconstitutional seizure and that the results of the later breath test on the Intoxilyzer 5000 were inadmissible as "fruit of the poisonous tree."

The trial court held a hearing and denied Shaw's motion to dismiss or, in the alternative, motion to suppress. Shaw moved for reconsideration of the trial court's decision on his motion to suppress, but the trial court denied Shaw's motion. Shaw waived his right to a jury trial and was tried upon stipulated facts. The trial court found Shaw guilty of felony DUI. The trial court sentenced Shaw to an underlying sentence of 12 months in jail. The trial court ordered Shaw to serve 48 hours in jail after which he would be eligible to serve the next 88 days in a work release program and then would be on probation for the remaining 9 months.

*Probable Cause*

First, Shaw contends that his motion to dismiss should have been granted due to the State's failure to prove at the preliminary hearing that he had two prior DUI convictions, a necessary element of a charge of felony DUI as a third-time offender. This court exercises a de novo standard of review when determining whether the evidence introduced at a preliminary hearing was sufficient to establish probable cause to believe that a defendant committed a

charged crime. *State v. Corbett*, 31 Kan. App. 2d 68, 71, 59 P.3d 1054, *rev. denied* 275 Kan. 966 (2003).

K.S.A. 2006 Supp. 22-2902(3) requires the discharge of a defendant if the evidence presented at the preliminary hearing does not establish probable cause to believe that a felony has been committed:

"If from the evidence it appears that a felony has been committed and there is probable cause to believe that a felony has been committed by the defendant, the magistrate shall order the defendant bound over to the district judge having jurisdiction to try the case; otherwise, the magistrate shall discharge the defendant."

In *State v. Seems*, 277 Kan. 303, Syl. ¶ 3, 84 P.3d 606 (2004), our Supreme Court held that a defendant must be discharged when the State fails to present evidence of two prior DUI convictions at a preliminary hearing for felony DUI under K.S.A. 8-1567(f):

"A defendant charged with felony driving while under the influence under K.S.A. 8-1567(f) is entitled to a preliminary hearing. Before a defendant so charged may be bound over for trial, the State must present sufficient evidence to establish that a felony has been committed and that there is probable cause to believe that a felony has been committed by the defendant. Failure of the State to present evidence of two prior driving while under the influence convictions, as required to establish a felony under K.S.A. 8-1567(f), requires discharge of the defendant for there has been no evidence presented that a felony has been committed under K.S.A. 2003 Supp. 22-2902(3)."

Here, Shaw informs this court that the only evidence presented at the preliminary hearing of his two prior DUI convictions was a certification of driver's records. Although Shaw's certified driving record is present in the record as an exhibit, the transcript from the preliminary hearing is not contained in the record on appeal. Moreover, at oral argument, this court was told by Shaw's counsel that no record was made of the preliminary hearing. Nevertheless, without some record of the preliminary hearing, this court cannot adequately review Shaw's argument. For instance, this court cannot determine whether the certified driving record was the only evidence presented of Shaw's prior DUI convictions. Moreover, this court cannot review whether Shaw stipulated to his prior DUI convictions as reflected in the certified driving record. See *State v.*

*Moore*, 35 Kan. App. 2d 274, 276, 129 P.3d 630 (2006) (evidence at preliminary hearing sufficient to establish probable cause to believe defendant committed felony DUI where defense counsel made qualified stipulation to defendant's prior DUI convictions). The burden is on the appellant to furnish a record which affirmatively shows that prejudicial error occurred in the trial court. Without such a record, an appellate court presumes the action of the trial court was proper. *State v. Holmes*, 278 Kan. 603, 612, 102 P.3d 406 (2004).

Nevertheless, even if Shaw's certified driving record was the only evidence presented at the preliminary hearing of Shaw's prior DUI convictions, Shaw's argument still fails. The State does not dispute Shaw's assertion that the certified driving record was the only evidence presented of his prior DUI convictions. The certified driving record shows that Shaw had a prior DUI conviction in November 2002. In addition, Shaw's certified driving record lists an administrative action from 1998 where a diversion agreement was entered into after a DUI arrest.

Shaw maintains that this administrative action of entering into a diversion agreement is not the same as a prior DUI conviction. Nevertheless, K.S.A. 2006 Supp. 8-1567(m) states:

> "For the purpose of determining whether a conviction is a first, second, third, fourth or subsequent conviction in sentencing under this section:
>
> (1) 'Conviction' includes being convicted of a violation of this section or entering into a diversion agreement in lieu of further criminal proceedings on a complaint alleging a violation of this section."

Thus, the legislature has made clear in K.S.A. 2006 Supp. 8-1567(m)(1) that a defendant's prior action of entering into a diversion agreement in lieu of further criminal prosecution for DUI is considered a prior conviction for purposes of sentencing a subsequent DUI as a first, second, third, fourth, or subsequent conviction. Therefore, we determine that Shaw's prior action of entering into a diversion agreement after an arrest for DUI constitutes a conviction for purposes of determining whether Shaw was a third-time offender.

Setting forth the standard used in determining whether the evidence presented at the preliminary hearing establishes probable

cause, our Supreme Court in *State v. Huser*, 265 Kan. 228, Syl. ¶ 2, 959 P.2d 908 (1998), stated:

"While the judge at a preliminary hearing must determine that there is some evidence to support a finding that a felony has been committed and the person charged committed it, the evidence need not prove guilt beyond a reasonable doubt, only probably cause. In order to prove probable cause, there must be evidence sufficient to cause a person of ordinary prudence and caution to conscientiously entertain a reasonable belief of the accused's guilt."

Here, the parties inform this court that the State presented Shaw's certified driving record at the preliminary hearing. This driving record indicated that Shaw had two prior DUI "convictions." This case is different from *Seems* where the State failed to present any evidence at the preliminary hearing of the defendant's prior DUI convictions. Our Supreme Court in *Seems* held that the "[f]ailure to present *some evidence* of two prior convictions at the preliminary hearing results in the failure to establish that a felony has been committed and that there was probable cause to believe that the felony has been committed by the defendant." (Emphasis added.) 277 Kan. at 306. In this case, however, the State did present "some evidence" of Shaw's prior DUI convictions. Consequently, this evidence was sufficient for purposes of the preliminary hearing to establish probable cause that Shaw had committed a felony.

*Implied Consent Advisories*

Next, Shaw contends that the trial court should have suppressed the results of his second breath test on the Intoxilyzer 5000 because Reed requested the second test before giving the implied consent advisories. Because the material facts are undisputed, this court has unlimited review over the trial court's denial of Shaw's motion to suppress. When the material facts to a trial court's decision on a motion to suppress evidence are not in dispute, the question of whether to suppress is a question of law over which an appellate court has unlimited review. *State v. Porting*, 281 Kan. 320, 324, 130 P.3d 1173 (2006).

In this case, Shaw took the first breath test on the Intoxilyzer 5000 without receiving implied consent advisories under K.S.A. 8-1001(f). Reed then realized that he had not given Shaw the implied

consent advisories and asked Shaw if he would submit to a second breath test. Shaw agreed to take another breath test. Reed then gave Shaw the implied consent advisories. After giving Shaw the implied consent advisories, Reed again asked Shaw if he would take the breath test. Shaw agreed to perform the second breath test on the Intoxilyzer 5000. Reed then administered the second Intoxilyzer 5000 breath test.

The relevant portion of K.S.A. 8-1001(f) states that "[b]efore a test or tests are administered under this section, the person shall be given oral and written notice" of various rights specified by statute. Our Supreme Court has held that the notice provisions of K.S.A. 8-1001 are mandatory rather than directory. *Barnhart v. Kansas Dept. of Revenue*, 243 Kan. 209, 213, 755 P.2d 1337 (1998).

Shaw does not dispute that Reed gave him both oral and written implied consent advisories before administering the second breath test on the Intoxilyzer 5000. Rather, Shaw maintains that Reed did not follow the proper procedure under K.S.A. 8-1001 when he asked Shaw to take the breath test before giving the implied consent advisories. Shaw focuses on K.S.A. 8-1001(h), which states: "*After* giving the foregoing information, a law enforcement officer shall request the person to submit to testing." (Emphasis added.) Nevertheless, the undisputed evidence in this case establishes that Reed did comply with K.S.A. 8-1001(h). Reed, after giving the implied consent advisories, did request Shaw to submit to breath testing. Shaw agreed to submit to the second breath test. While it is undisputed that Reed did ask Shaw to submit to the second breath test before giving the implied consent advisories, Reed provides no authority establishing how this earlier request tainted Reed's later request after the implied consent advisories were given. The undisputed evidence in this case establishes that Reed did comply with K.S.A. 8-1001(h) by requesting Shaw to submit to testing *after* he gave the implied consent advisories.

Citing *State v. Luft*, 248 Kan. 911, 811 P.2d 873 (1991), Shaw states in his brief that "[t]he result of a failure to give implied consent advisories prior to a request for and administration of breath alcohol testing is that the results of the test should be suppressed and rendered inadmissible." *Luft*, however, never held that

the failure to give implied consent advisories before a *request* for breath alcohol testing required suppression of the test results. Instead, *Luft* involved a failure to give implied consent advisories altogether. The *Luft* court held that a failure to inform the accused of the implied consent advisories under K.S.A. 1990 Supp. 8-1001(f) required "suppression of the results of the blood alcohol tests administered by the State." 248 Kan. 911, Syl. ¶ 2. In the instant case, Reed did give the implied consent advisories to Shaw. Thus, the holding in *Luft* does not apply to this case. Moreover, as discussed above, Reed did comply with K.S.A. 8-1001(f) and (h) by giving the implied consent advisories and then asking Shaw to submit to the breath test. After Shaw agreed to submit to the breath test, Reed administered the test on the Intoxilyzer 5000. The results of the second test on the Intoxilyzer 5000 were properly admitted by the trial court because Reed gave Shaw the implied consent advisories before Shaw submitted to the second test.

## Fruit of the Poisonous Tree

Finally, Shaw contends that the results of the second breath test on the Intoxilyzer 5000 should have been suppressed as fruit of the poisonous tree of both the preliminary breath test and the inadmissible first test on the Intoxilyzer 5000. Because the material facts are undisputed, this court has unlimited review over the trial court's denial of Shaw's motion to suppress. When the material facts to a trial court's decision on a motion to suppress evidence are not in dispute, the question of whether to suppress is a question of law over which an appellate court has unlimited review. *Porting*, 281 Kan. at 324.

"[T]he exclusionary rule prohibits the admission of the 'fruits' of illegally seized evidence, *i.e.*, any information, object, or testimony uncovered or obtained, directly or indirectly, as a result of the illegally seized evidence or any leads obtained therefrom." *State v. Jones*, 279 Kan. 71, 76, 106 P.3d 1 (2005) (citing *State v. Horn*, 278 Kan. 24, 31, 91 P.3d 517 [2004]).

Moreover, quoting *Wong Sun v. United States*, 371 U.S. 471, 9 L. Ed. 2d 441, 83 S. Ct. 407 (1963), our Supreme Court has stated the following regarding the "fruit of the poisonous tree" doctrine:

" 'We need not hold that all evidence is "fruit of the poisonous tree" simply because it would not have come to light but for the illegal actions of the police. Rather, the more apt question in such a case is "whether, granting establishment of the primary illegality, the evidence to which instant objection is made has been come at by exploitation of that illegality or instead by means sufficiently distinguishable to be purged of the primary taint." [Citation omitted.]' " *State v. Hodges,* 252 Kan. 989, 1006, 851 P.2d 352 (1993).

In arguing that the results of the second Intoxilyzer test should have been suppressed as fruit of the poisonous tree, Shaw relies on *Jones*. In *Jones*, our Supreme Court held that the taking of deep lung air that occurred in the preliminary breath test administered to the defendant was a search that required the defendant's consent. Our Supreme Court held that the State failed to meet its burden that the defendant's consent was voluntarily, knowingly, and intelligently given. Moreover, the implied consent provisions of K.S.A. 8-1001 could not supply the consent for a preliminary breath test. Our Supreme Court held that the results of the preliminary breath test result were inadmissible. Moreover, without the results from the preliminary breath test in that case, "the State did not meet the predicates from 8-1001 that would permit the subsequent blood test." 279 Kan. at 82. That is, "the officer had no reasonable grounds to believe the person was operating or attempting to operate a vehicle while under the influence of alcohol or drugs, or both." 279 Kan. at 82. The parties in that case had stipulated that without the preliminary breath test results, the officer did not have probable cause to believe that he was driving under the influence in violation of K.S.A. 8-1567. Our Supreme Court stated that "the officer's 'reasonable grounds to believe' were based entirely upon the PBT, which we hold was involuntarily performed by Jones." 279 Kan. at 82. In holding that the results of the blood test were inadmissible, our Supreme Court stated: "Whether characterized as the result of failure to meet the requirements for testing under K.S.A. 8-1001 or as fruit of the poisonous tree, the subsequent blood test results were also inadmissible." 279 Kan. at 82.

Here, the State acknowledges that the results of the preliminary breath test were inadmissible under *Jones*. Nevertheless, the State

maintains that the later Intoxilyzer breath test should not be suppressed under *Jones*.

As the State correctly points out, *Jones* is factually distinguishable from the instant case. Without the preliminary breath test results, the officer had no reasonable grounds to believe that the defendant was operating or attempting to operate a vehicle while under the influence of alcohol. Our Supreme Court in *Jones* pointed out that "[t]he officer had performed no field sobriety tests and had made no observations suggesting alcohol use such as Jones' physical characteristics or confession to alcohol consumption." 279 Kan. at 82. Here, in contrast to *Jones*, Reed had performed field sobriety tests and had made observations suggesting alcohol use. As Reed was attempting to stop Shaw, Reed saw Shaw drive over the curb and onto the sidewalk and nearly hit a sign post. After Reed stopped Shaw, he smelled an odor of alcohol coming from inside the car. When Shaw was sitting in his patrol car, he continued to smell an odor of alcohol. Reed noticed that Shaw's eyes were bloodshot and watery. Shaw admitted to drinking approximately four beers. Moreover, Reed observed four clues of impairment while Shaw was performing the walk-and-turn test. Reed testified at the suppression hearing that even without the preliminary breath test, he would have placed Shaw under arrest and taken him to the jail for further breath testing.

Our Supreme Court in *Jones* contrasted the facts of that case with *State v. Chacon-Bringuez*, 28 Kan. App. 2d 625, 18 P.3d 970, *rev. denied* 271 Kan. 1038 (2001). In *Chacon-Bringuez*, the officer, in addition to obtaining preliminary breath test results that indicated the defendant's breath sample was above the legal limit, had smelled an odor of alcohol on the defendant's breath, had noticed the defendant's eyes were bloodshot and watery, had seen 9 beers in a 12-pack box in the truck, had seen the defendant lean on his truck to maintain his balance, and had observed several clues of impairment on two field sobriety tests. In addition, the defendant admitted he drank three beers earlier in the day.

The facts in the instant case are similar to those in *Chacon-Bringuez*. Reed had observed numerous signs that Shaw had been drinking and was intoxicated. Moreover, Shaw admitted to con-

suming approximately four beers that evening. Even without the preliminary breath test results, the evidence in this case provided probable cause to believe that Shaw was driving under the influence of alcohol and to detain him for breath testing at the law enforcement center. As a result, the Intoxilyzer breath test results were not fruit of the poisonous tree of the preliminary breath test under *Jones*.

Shaw also argues that the breath test results from the second Intoxilyzer test were fruit of the poisonous tree of the first Intoxilyzer test. The State concedes that the results from the first Intoxilyzer test were inadmissible due to Reed's failure to give implied consent advisories before administering the test. Nevertheless, the State argues that the admissibility of the first Intoxilyzer test results did not affect the probable cause that existed to support the second test. We agree.

The probable cause that justified administering both Intoxilyzer breath tests came from the evidence that was obtained before Shaw even arrived at the police station. Reed performed the second Intoxilyzer test only because he realized that he had not given the implied consent advisories before administering the first Intoxilyzer test. The results of the second Intoxilyzer test were not obtained "as a result" of the first Intoxilyzer test "or any leads obtained therefrom." See *Jones*, 279 Kan. at 76. Therefore, the results from the second Intoxilyzer test were not the fruit of the poisonous tree. As a result, Shaw's argument fails.

Affirmed.