(208 P.3d 788)
No. 100,990

STATE OF KANSAS, *Appellant*, v. CHELLA LYNN BRADLEY, *Appellee*.

Opinion filed June 12, 2009.

*Joe Shepack*, county attorney, and *Steve Six*, attorney general, for the appellant.

*Michael S. Holland, II*, of Holland and Holland, of Russell, for the appellee.

Before MALONE, P.J., PIERRON and GREENE, JJ.

PIERRON, J.: This is an interlocutory appeal taken by the State pursuant to K.S.A. 22-3603 from an order granting Chella Lynn Bradley's motion to suppress her refusal to submit to a breath alcohol test in its prosecution against Bradley for driving under the influence (DUI). We affirm in part, reverse in part, and remand with directions.

In the early morning hours of December 28, 2007, Bradley's SUV collided with a semitrailer truck on I-70 during a snow storm. Ellsworth County Sheriff's Deputy Bill Chansler responded to investigate the accident. Upon contacting Bradley, who remained seated in her SUV, Chansler noted she smelled of alcohol and had bloodshot eyes. Bradley also fell out of her SUV when she opened the door, and she required Chansler's assistance in getting to the patrol car. As a result, Chansler placed Bradley under arrest and put her in his patrol car. At that point, Chansler, without giving Bradley the implied consent advisory notices required by K.S.A. 2007 Supp. 8-1001, asked her if she would submit to a breath test. Bradley refused.

After Chansler completed his investigation of the accident, he transported Bradley to the law enforcement center. Once there, Chansler read Bradley the required implied consent advisory no-

tices and again requested that she take a breath test. Bradley still refused.

The State charged Bradley with DUI. Bradley filed a motion to suppress, arguing (in pertinent part) that because Chansler requested she submit to a breath test at the scene without first advising her of her rights under the Kansas Implied Consent Law, anything that occurred thereafter, including her subsequent refusal to take the test at the police station with the proper advisement of her rights, had to be suppressed.

The trial court conducted a hearing on Bradley's motion. Chansler testified about the circumstances surrounding his first request that Bradley submit to a breath test and the second request at the police station. The court subsequently entered a journal entry granting Bradley's motion to suppress because Chansler had failed to give the required implied consent advisories before his first request that Bradley submit to a breath test. The State timely filed this interlocutory appeal challenging that suppression ruling.

K.S.A. 22-3603 allows the prosecution to appeal from a pretrial order suppressing evidence. A threshold requirement for such an interlocutory appeal is that the suppression order appealed from must substantially impair the State's ability to prosecute the case. See *State v. Griffin*, 246 Kan. 320, 324, 787 P.2d 701 (1990); *State v. Newman*, 235 Kan. 29, 34, 680 P.2d 257 (1984).

Generally, this issue arises when appellate jurisdiction is challenged by the defendant-appellee or this court orders the State to make this necessary showing. Neither situation occurred in this case. Nevertheless, the State summarily notes in its brief that our appellate courts have held that suppression of breath or blood test results justifies an interlocutory appeal by the State. See, *e.g.*, *State v. Huninghake*, 238 Kan. 155, 156-57, 708 P.2d 529 (1985) (suppression of blood alcohol test, given the statutory presumption of intoxication based on the test, substantially impaired State's ability to prosecute DUI case); *State v. Wanttaja*, 236 Kan. 323, 325, 691 P.2d 8 (1984) (suppression of blood alcohol test substantially impaired State's ability to prosecute DUI case). Compare *State v. Jones*, 236 Kan. 427, 428, 691 P.2d 35 (1984) (suppression of testimony by highway patrolman regarding defendant's refusal to

complete one phase of field sobriety test did not substantially impair State's ability to prosecute DUI case).

The only issue before us is the propriety of the trial court's suppression of Bradley's second refusal to take the test at the police station after she had been read the proper implied consent advisories. The State advances no argument regarding how its case is substantially impaired by this suppression order.

Bradley claims the suppression of her *refusal* to take the test differs from those cases where alcohol test *results* were suppressed. She contends in her case that "there was essentially no evidence suppressed." Bradley then suggests this court should refuse to exercise jurisdiction and remand the matter for trial "based upon the evidence which the State already possesses which will essentially be unchanged by this Court's decision as to whether [Bradley's] refusal to submit to testing under the Kansas Implied Consent Law was properly obtained by the law enforcement officer."

The State did not file a reply brief. Its failure to adequately brief the issue of substantial impairment of its prosecution could be deemed waiver or abandonment of the necessary jurisdictional showing. Accordingly, this court could refuse to exercise jurisdiction over the State's interlocutory appeal. See *State v. Walker*, 283 Kan. 587, 594, 153 P.3d 1257 (2007) (An issue not briefed by the appellant is deemed waived or abandoned.).

However, a refusal to perform a breath test is evidence that would be admissible at trial should the State proceed with its prosecution. K.S.A. 2007 Supp. 8-1001(i); see *State v. Baker*, 269 Kan. 383, 388, 2 P.3d 786 (2000) (alcohol testing refusal clearly admissible).

Although not an issue in this appeal, at the suppression hearing, Bradley challenged Chansler's probable cause to arrest her for DUI. The trial court found that based on the surrounding circumstances (the accident and Chansler's observations that Bradley had bloodshot eyes, smelled like alcohol, and was very unstable), Chansler had probable cause to arrest her for DUI. Bradley does not challenge this probable cause finding. Granted, at this point in the proceedings, we cannot fully assess the strength of the State's evidence against Bradley. Nonetheless, it could be observed that

without any field sobriety testing or other objective indicators of intoxication, and in light of the mitigating circumstances of the snowstorm, this limited evidence supporting a probable cause determination could arguably be insufficient to support a more stringent finding beyond a reasonable doubt that Bradley was driving while intoxicated in violation of K.S.A. 2007 Supp. 8-1567(a)(3). Thus, it seems reasonable to conclude that the State's ability to prosecute its case against Bradley is substantially impaired by the suppression of Bradley's second refusal to take a breath test.

There is no dispute that the proper implied consent advisory notices were not given before Chansler requested Bradley give a breath test the first time, while she was sitting in the patrol car after having been arrested for DUI. In fact, the State seems to concede the initial inquiry and Bradley's first refusal should be suppressed. Nor is there any dispute that Chansler gave the proper implied consent advisory notices at the police station before requesting Bradley submit to a breath test the second time. Thus, the sole issue before this court appears to be what effect, if any, Chansler's initial request without the required notices had on his second request after giving the required notices. Or, as framed by the trial court: "The issue is whether when the officer first asked [Bradley] to take the test and did not give those implied consents does that taint the second request to such an extent that it should be suppressed?" The trial court answered this issue in the affirmative.

Where the material facts underlying a suppression decision are undisputed, this court has unlimited review over the legal question of whether suppression was warranted. See *State v. Porting*, 281 Kan. 320, 324, 130 P.3d 1173 (2006). Moreover, the trial court and the parties approach this issue as one of statutory interpretation. Likewise, this court has unlimited review over questions of statutory interpretation. See *State v. Storey*, 286 Kan. 7, 9-10, 179 P.3d 1137 (2008).

K.S.A. 2007 Supp. 8-1001(f) provides that before a test is "administered," the person shall be given specific notices regarding aspects of the Kansas Implied Consent Law and the consequences of refusing to take the test when requested. Our Supreme Court

has recognized that the notice provisions of 8-1001(f) are mandatory. *State v. Luft*, 248 Kan. 911, Syl. ¶ 1, 811 P.2d 873 (1991). However, substantial compliance with the notice provisions of the statute is sufficient. *Barnhart v. Kansas Dept. of Revenue*, 243 Kan. 209, 213, 755 P.2d 1337 (1988); *State v. Branscum*, 19 Kan. App. 2d 836, Syl. ¶ 3, 877 P.2d 458, *rev. denied* 255 Kan. 1004 (1994).

The trial court acknowledged that K.S.A. 2007 Supp. 8-1001(f) requires the notices before a test is administered. However, it then looked at both K.S.A. 2007 Supp. 8-1001(h) and K.S.A. 8-2,145(c), the language of which suggests the required notices have to be given before the tests are *requested*, as opposed to *administered*. The court noted those sections deal with the implied consent of a person who is either under the age of 21 and/or a person who has commercial motor vehicle driver's license—neither of which appears to apply this case. Nevertheless, the court reasoned:

"It has been the position of the courts of Kansas that the DUI laws and the implied consent laws must be strictly construed and strictly followed.

"This court finds it interesting to note there seems to be under K.S.A. 8-1001(h) and 8-2,145(c), a requirement that before you can even request the test the notices, orally and in writing, must be provided to the defendant. Under K.S.A. 8-1001(f), it states that before the tests are administered and not before they are requested, there shall be oral and written notices provided. The court does not know if that is an intentional discrepancy or an inadvertent discrepancy but there is a difference in the way those sections are written. Because of this difference and because the statutes have been strictly construed and it should be strictly construed in favor of the defendant, the court is going to grant the defendant's Motion to Suppress the breath test for the officer's failure to strictly construe and comply with the statute in that he requested a breath test before giving the oral and written notices as required by the statute, at least in part of the section of K.S.A. 8-1001."

The trial court acknowledged that the statutorily required written and oral notices "were given at the second opportunity prior to the request." However, it concluded that "the statutes are unclear as to whether and how that initial request without the proper notice being given should effect the case. The court, based upon the strict construction in favor of the defendant finds the Motion to Suppress should be granted."

The State argues on appeal that because K.S.A. 2007 Supp. 8-1001(f) specifies the notices to be given before the test is "administered," it was not triggered when, in the first instance, Deputy Chansler asked Bradley if she would take a breath test because he could not have intended to administer a breath test in his patrol car, where there was no Intoxilyzer 5000 machine present. Rather, Chansler meant to administer the test at the police department, and he gave the proper implied consent advisory notices before requesting it. In other words, the State seems to suggest that the relevant inquiry is the requesting officer's intent in inquiring if a person will submit to a breath test. However, the statutes are not tied to the intent of the officer.

The State also acknowledges that, as relied on by the trial court in its reasoning, K.S.A. 2007 Supp. 8-1001(h) states: "After giving the forgoing information, a law enforcement officer shall request the person submit to testing." However, the State contends that because the statute does not provide or suggest that a misstatement, error, or omission in the content of required implied consent advisories cannot be cured by rereading the statutorily required notices prior to testing, the only required inquiry is whether the implied consent advisory notices were rendered prior to the test being administered.

In support, the State cites K.S.A. 2007 Supp. 8-1001(n), which provides: "No test results shall be suppressed because of technical irregularities in the consent or notice required pursuant to this act." The State suggests that if this court is to ascribe meaning to this statute, "then the conversation in the Deputy's car at the wreck scene should not be allowed to preclude the Deputy from subsequently and properly administering the Implied Consent Advisory at the Sheriff's Office." The State claims this is an issue of first impression and seeks to analogize the situation to one in which officers are allowed to reinterview and/or reinterrogate subjects even though they previously neglected to give a proper *Miranda* warning and to take statements thereafter. *Cf. State v. Kelly*, 14 Kan. App. 2d 182, Syl. ¶ 2, 786 P.2d 623 (1990) (analyzing a defendant's invocation of his statutory right to counsel after taking a breath test under K.S.A. 1987 Supp. 8-1001[f][1][E]).

In response, Bradley insists the trial court properly determined that despite the use of the term "administered" in K.S.A. 2007 Supp. 8-1001(f), the legislature clearly intended that the statutory warnings be given before the tests are requested. Bradley further argues that logic dictates such a conclusion because if the State's interpretation is adopted, "an officer could simply request . . . testing in his own terminology, or without any warnings at all, and then simply read the individual their Implied Consent Advisories immediately before subjecting the person to testing." She contends that the entire premise of the Kansas Implied Consent Law would be abrogated unless the officer is required to give the person the statutorily mandated notices before requesting a breath test. Bradley further suggests that to condone what happened in her case would allow an officer to request multiple tests until the officer "finally obtains the answer which was desired."

Bradley further maintains that K.S.A. 2007 Supp. 8-1001(n) does not apply in these situations, but even if it did, a complete failure to give the required notices before requesting a test is not a "technical irregularity." Moreover, Bradley suggests that K.S.A. 2007 Supp. 8-1001(n) does not apply because it speaks only in terms of suppression of test *results*, not a test *refusal*.

The trial court's ruling is largely grounded on the general rule that, ordinarily, criminal statutes are to be strictly construed. However, applying this rule of strict construction simply means that words are given their ordinary meaning, with *any reasonable doubt* about the meaning being decided in favor of the person subjected to the criminal statute. *State v. Skolaut*, 286 Kan. 219, 230, 182 P.3d 1231 (2008). The rule of strict construction

"does not permit or justify a disregard of manifest legislative intention appearing from plain and unambiguous language used in the statute under consideration. [Citations omitted.] A penal statute should not be so read as to add that which is not found therein or to read out what as a matter of ordinary English language is in it. [Citation omitted.]" *State v. Walden*, 208 Kan. 163, 166, 490 P.2d 370 (1971).

Here, there was no reasonable doubt to be resolved in Bradley's favor. K.S.A. 2007 Supp. 8-1001(f) clearly and unambiguously provides that the required notices enumerated thereunder are to be given before a breath test is administered. The fact that other,

inapplicable subsections of the implied consent statutes might speak in terms of giving the required notices before *requesting* a breath test does not appear to alter this conclusion.

Ultimately, it is not necessary for us to definitively decide *when* the notices must be given under which subsection of the implied consent act. In fact, there does not appear to be any dispute that Chansler gave the proper advisories before he *requested* the second test. Rather, the real dispute to be resolved is whether, under the facts of this case, Chansler's failure to give the required notices prior to the first request that Bradley submit to a breath test prohibited him from requesting she submit to a breath test a second time after he had given Bradley the required statutory notices.

On at least two occasions, the appellate court has ruled that suppression of the results of the second test or request given in compliance with K.S.A. 8-1001(f) and/or K.S.A. 8-1001(h) was not required, despite the fact that it was preceded by the request for or administration of a test that did not comply with the statutory notice provisions. See *State v. Shaw*, 37 Kan. App. 2d 485, 491-96, 154 P.3d 524, *rev. denied* 284 Kan. 950 (2007) (although officer failed to comply with implied consent advisories before first test on Intoxilyzer 5000, where officer adequately complied by giving advisories before defendant submitted to second test, results of second test were properly admitted); *State v. Weber*, No. 95,247, unpublished opinion filed September 15, 2006, *rev. denied* 282 Kan. 796 (2006), slip op. at 10-11 (Officer did not provide requisite implied consent advisories before initial request for blood test, which defendant refused. However, immediately after the initial request, the officer arrested the defendant, provided the advisories, and again requested a blood tests, which the defendant again refused. Because there was substantial compliance with K.S.A. 8-1001[b] and [f], there was no error in denying the defendant's motion to suppress evidence of his refusal to submit to alcohol testing.).

This is not to say that the hypothetical envisioned by Bradley concerning an officer's unending requests for alcohol test without giving the necessary warnings would be condoned by our ruling that her second refusal to take the test is admissible. The results

of a second or subsequent test or request will be suppressible as the fruit of the poisonous tree if it can be shown those results are obtained " 'as a result' " of the first Intoxilyzer test " 'or any leads obtained therefrom.' " *Shaw*, 37 Kan. App. 2d at 496 (quoting *State v. Jones*, 279 Kan. 71, 76, 106 P.3d 1 [2005]). No such showing was made in this case.

Thus, we conclude the district court erred in suppressing the evidence of Bradley's second refusal to submit to a breath test, which occurred after she was given the necessary implied consent advisories.

We affirm the suppression of Bradley's initial refusal to submit to a breath test, but we reverse the district court's suppression of the second refusal and remand for further proceedings consistent with this opinion.