NOT DESIGNATED FOR PUBLICATION

No. 112,795

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

STATE OF KANSAS,
*Appellee*,

v.

JUSTIN P. GONZALEZ,
*Appellant*.

MEMORANDUM OPINION

Appeal from Douglas District Court; PEGGY C. KITTEL, judge. Opinion filed February 5, 2016. Affirmed.

*J. Ryan Erker*, of Erker Law Firm, P.A., of Olathe, for appellant.

*Patrick J. Hurley*, assistant district attorney, *Charles E. Branson*, district attorney, and *Derek Schmidt*, attorney general, for appellee.

Before MCANANY, P.J., POWELL, J., and DAVID J. KING, District Judge, assigned.

*Per Curiam*:  A jury convicted Justin P. Gonzalez of involuntary manslaughter, a severity level 5 person felony. On appeal, Gonzalez raises six points of error:  (1) The district court erred by refusing to admit character evidence of the victim's alleged propensity for violence and his turbulent character; (2) the district court erred by failing to grant his motion to compel the State to disclose the victim's criminal history; (3) the State committed a violation of *Brady v. Maryland*, 373 U.S. 83, 87, 83 S. Ct. 1194, 10 L. Ed. 2d 215 (1963), by refusing to release portions of the victim's criminal history; (4) the

1

district court erred when it failed to provide him with a separate evidentiary hearing regarding his motion to dismiss based on his assertion of immunity; (5) there was insufficient evidence to prove both alternative means of committing involuntary manslaughter; and (6) cumulative error denied him a fair trial. After a thorough review of the record, we find no merit to Gonzalez' contentions of error and affirm his conviction.

FACTUAL AND PROCEDURAL BACKGROUND

On February 24, 2012, Gonzalez attended a going away party for a friend in Lawrence, Kansas, hosted by Whitney Beck. Guests began arriving around 9 p.m., and the party continued into the early hours of the next day. Approximately 30 to 50 people attended the party, with Gonzalez and Jake Anderson among those in attendance. Around 2 a.m. on February 25, 2012, Amanda Lehner and another occupant of the home, neither of whom were attending the party, returned to the house with friends. Among these friends was Nicholas Sardina.

Beck and one of the returning roommates got into a verbal altercation about whether the party should conclude and whether Beck's guests should leave. Tension between the two groups—one group containing Beck's party attendees, which included Gonzalez and Anderson, and the other comprising Lehner's group of friends, which included Sardina—grew. During this growing tension, Anderson and Sardina began a verbal altercation in which Anderson continued to express his unwillingness to leave the party. Sardina approached Anderson, and a few more words were exchanged. Sardina did not make any verbal threats to harm or kill Anderson nor did he ever brandish a weapon. Beck's party attendees began to gather around Anderson and Sardina. Sardina pushed Anderson against the wall and hit him once on the left side of his face. There was no testimony that Anderson called for help, and one party attendee testified that he thought Anderson was all right after being hit and would be able to defend himself.

2

Gonzalez was in an adjacent room when the verbal altercation begin between Anderson and Sardina and moved to the entryway. After witnessing Sardina hitting Anderson, Gonzalez struck Sardina in the back left side of the head with a glass beer bottle. The bottle shattered upon impact, and Sardina fell to the floor. Anderson then pushed Sardina into a corner and held him in a headlock on the floor. Another partygoer tried to shield Sardina from attack, and Anderson was eventually pulled off of Sardina. While Gonzalez left quickly on foot out the back door, Sardina did not immediately leave the scene but stayed and talked to one of the roommates. The roommate noticed bleeding and cuts on the back of Sardina's head, and she asked if he wanted to go to the hospital. Sardina replied that he would go to the hospital if his head still hurt in the morning.

Some time the next morning, Sardina passed away from the injuries he sustained from the blow by Gonzalez. The official cause of death was determined to be an epidural hematoma caused by blunt force trauma to the back of the head. The State charged Gonzalez in the alternative with involuntary manslaughter under K.S.A. 2014 Supp. 21-5405(a)(1) (recklessly), (a)(2) (in the commission of a felony or misdemeanor enacted for the protection of human life, *i.e.*, battery), and (a)(4) (during commission of a lawful act in an unlawful manner). At some time after the preliminary hearing, the State proceeded only on alternatives under K.S.A. 2014 Supp. 21-5405(a)(1) and (a)(2).

Prior to trial, Gonzalez filed a motion to dismiss due to immunity from prosecution and a motion to admit evidence of Sardina's violent behavior through records of his prior convictions. The district court denied the motion to dismiss due to immunity, finding that the State had presented probable cause that Gonzalez' action was not justified under self-defense, and denied in part Gonzalez' motion to admit evidence. The district court held that crimes from Sardina's criminal history involving truth or veracity could be admitted but evidence of Sardina's turbulent character was inadmissible because

3

"there [was] no dispute over the allegation that Mr. Sardina was the one who took the first swing . . . that started the physical altercation. . . . [T]he defendant was not acquainted with the decedent and wouldn't know his reputation for turbulent behavior. It is irrelevant what type of character decedent was or whether he had a propensity towards violence. What is relevant is what happened on the night of this offense."

At trial, medical testimony indicated that Sardina's blood alcohol content at the time of the injury was .08 and there was a low therapeutic amount of a prescribed antianxiety medication in Sardina's system. Neither the prescribed medication nor the alcohol caused Sardina's death. Gonzalez testified he never intended to kill Sardina but admitted that he knew hitting anyone in the head could be deadly force.

Gonzalez' first trial ended in a mistrial due to a hung jury. The jury in his second trial convicted Gonzalez of involuntary manslaughter. Following the trial, Gonzalez filed a motion for a new trial. The district court denied the motion and sentenced him to 32 months' imprisonment.

Gonzalez timely appeals.

### DID THE DISTRICT COURT ERR BY REFUSING TO ADMIT CHARACTER EVIDENCE OF SARDINA'S ALLEGED PROPENSITY FOR VIOLENCE?

Gonzalez first argues the district court erred when it did not admit Sardina's criminal history. Specifically, Gonzalez attempted to introduce evidence that Sardina had been sentenced for battery in the Douglas County District Court on the day the underlying incident of this case occurred.

Multiple inquiries are involved when the admission of evidence is challenged on appeal. First, a court must determine whether the evidence is relevant. Second, a court

must determine if the evidence's probative value outweighs its potential for creating prejudice.

Generally speaking, all relevant evidence is admissible. K.S.A. 60-407(f). Evidence is relevant when it has "any tendency in reason to prove any material fact." K.S.A. 60-401(b). This definition encompasses two elements: a materiality element and a probative element. *State v. Martinez*, 290 Kan. 992, 1009, 236 P.3d 481 (2010). "Evidence is material when the fact it supports is in dispute or in issue in the case and is probative when it has a logical tendency to prove a material fact." *State v. Lowrance*, 298 Kan. 274, 289, 312 P.3d 328 (2013). "[M]ateriality is reviewed de novo, and the assessment of the probative value is reviewed under an abuse of discretion standard." *State v. Huddleston*, 298 Kan. 941, 959-60, 318 P.3d 140 (2014).

"Probative evidence furnishes, establishes, or contributes toward proof." *State v. Marks*, 297 Kan. 131, 142, 298 P.3d 1102 (2013). However, even probative evidence may be excluded as a trial court has the discretion to exclude such evidence where the court finds its probative value is outweighed by its potential for producing undue prejudice. See K.S.A. 60-445.

1.      *Relevance of Sardina's criminal history*

Gonzalez proposed to admit evidence of Sardina's battery conviction, the violation of his probation, and his consumption of drugs and alcohol. Gonzalez contends this evidence would have been used to show that:  (1) Sardina was the initial aggressor; (2) Sardina was aggressive and threatening with his behavior; and (3) Sardina's propensity for violence tended to show that he was more likely to act in accordance with his propensity. Each of these arguments for relevance will be addressed in turn.

5

First, Gonzalez argues Sardina's criminal history would have supported the fact that Sardina was the initial aggressor. However, the State does not dispute that Sardina initiated the physical contact, and there is ample support in the record that Sardina was the initial aggressor. Gonzalez states in his brief that the State elicited testimony from a witness that called into question whether Sardina was the initial aggressor. This is incorrect. The record reveals that this witness never testified that he saw the beginning of the fight or who initiated physical contact. Because there was no dispute as to who was the initial aggressor, evidence of Sardina's criminal history was not material on this point. See *State v. Bowen*, 299 Kan. 339, 348, 323 P.3d 853 (2014).

Second, Gonzalez argues that Sardina's criminal history would have been used to prove that Sardina was aggressive and threatening with his behavior. Again, there is no dispute that Sardina was the initial aggressor, and Sardina's criminal history was immaterial to prove Sardina was aggressive and threatening. See 299 Kan. at 348.

Third, Gonzalez argues Sardina's criminal history would have demonstrated Sardina's propensity for violence, his likelihood of acting in accordance with that propensity, and Sardina's drug and alcohol use magnified his aggressive behavior. To evaluate the soundness of this argument, we need to review the law governing self-defense and defense of another.

K.S.A. 2014 Supp. 21-5222 defines the lawfulness of the use of force for self-defense or defense of another person:

"(a) A person is justified in the use of force against another when and to the extent it appears to such person and such person reasonably believes that such use of force is necessary to defend such person or a third person against such other's imminent use of unlawful force.

6

"(b) A person is justified in the use of deadly force under circumstances described in subsection (a) if such person reasonably believes that such use of deadly force is necessary to prevent imminent death or great bodily harm to such person or a third person.

"(c) Nothing in this section shall require a person to retreat if such person is using force to protect such person or a third person."

In applying this statute, our Supreme Court has applied a two prong test. "The first prong is subjective [and asks whether] the defendant sincerely believe[d] it was necessary to kill in order to defend himself or another? The second prong is objective [and asks whether] the defendant's belief [was] reasonable?" *State v. Rutter*, 252 Kan. 739, 746, 850 P.2d 899 (1993). "Thus, self-defense and defense of another require evidence of the defendant's state of mind at the time of the killing." *State v. Williams*, 303 Kan.___, ___ P.3d ___ (No. 109,353, filed January 8, 2016, slip op. at 12).

Gonzalez argues he felt he had to act because his friends would be injured if he did not. Gonzalez relies on *State v. Deavers*, 252 Kan. 149, 156-57, 843 P.2d 695 (1992), *cert. denied* 508 U.S. 978 (1993), for support:

"Where self-defense is an issue in a homicide case, evidence of the turbulent character of the deceased is admissible. Such evidence may consist of the general reputation of the deceased in the community, but specific instances of misconduct may be shown only by evidence of a conviction of a crime."

While this is a correct statement of the law, the circumstances in *Deavers* surrounding the initiation of the self-defense were in controversy. Here, there was no dispute that Sardina was the initial aggressor; therefore, *Deavers* is not applicable.

Moreover, Gonzalez had no knowledge of Sardina's criminal history when the fight occurred; therefore, such evidence was irrelevant in establishing Gonzalez' state of

7

mind. See *Williams*, Slip op. at 13. The same is true for Sardina's drug and alcohol usage. Gonzalez asserts that Sardina's drug and alcohol use magnified Sardina's propensity for violence but provides no basis that he knew what was in Sardina's system. The evidence from the trial showed that Sardina was only mildly intoxicated, had a therapeutic amount of a prescribed medication in his system, and had no illegal narcotics in his system. Because Gonzalez had no knowledge of Sardina's propensity for violence or his drug or alcohol use that evening, he had no knowledge whether alcohol use would have magnified Sardina's propensity for violence, making Sardina's past drug and alcohol usage irrelevant. The district court did not err in refusing to admit Sardina's complete criminal history.

2. *Exclusion of this character evidence did not violate Gonzalez' right to a fair trial.*

Gonzalez also contends the trial court denied his constitutional right to present a full and complete defense and erred when it excluded portions of Sardina's criminal history. According to Gonzalez, this issue involves an interpretation of constitutional law as to how he is allowed to present his defense. See *State v. Alderson*, 260 Kan. 445, 460, 922 P.2d 435 (1996).

However, the record is clear that Gonzalez was allowed to present his defense-of-a-third-person theory, and the trial court instructed the jury on that theory. Gonzalez testified to his view of the fight between Anderson and Sardina and was permitted to testify as to why he hit Sardina with the bottle. The trial court did not exclude all of the evidence in support of Gonzalez' theory of defense. "Thus, a constitutional issue is not at stake, and this court's standard of review is not unlimited. Instead, we determine whether the district court abused its discretion in excluding evidence." 260 Kan. at 461. A judicial action constitutes an abuse of discretion if the action (1) is arbitrary, fanciful, or

unreasonable; (2) is based on an error of law; or (3) is based on an error of fact. *State v. Ward*, 292 Kan. 541, 550, 256 P.3d 801 (2011), *cert. denied* 132 S. Ct. 1594 (2012).

Again, it was undisputed that Sardina was the initial aggressor. Gonzalez was allowed to present evidence that Sardina initiated the fight, and he was allowed to present his defense of defense of a third person to the jury. We have already determined the district court's exclusion of portions of Sardina's criminal history was correct because such evidence was irrelevant. Therefore, there was no abuse of discretion.

### DID THE DISTRICT COURT VIOLATE GONZALEZ' RIGHTS BY FAILING TO GRANT HIS MOTION TO COMPEL THE STATE TO DISCLOSE SARDINA'S CRIMINAL HISTORY?

Second, Gonzalez argues the district court violated his rights to confrontation and to effective assistance of counsel under the Sixth Amendment to the United States Constitution when it denied his request to compel the State to turn over police records about Sardina's prior battery charge and other criminal history.

The Sixth Amendment provides that "[i]n all criminal prosecutions, the accused shall enjoy the right . . . to be confronted with the witnesses against him." The Sixth Amendment is applied to the states through the Fourteenth Amendment to the United States Constitution. *Pointer v. Texas*, 380 U.S. 400, 403, 85 S. Ct. 1065, 13 L. Ed. 2d 923 (1965). The Kansas Constitution Bill of Rights, § 10, also provides a criminal defendant the right "to meet the witness face to face." The standard of review of a confrontation clause issue is de novo. See *State v. Nguyen*, 281 Kan. 702, 713-14, 133 P.3d 1259 (2006).

With this argument, Gonzalez is again attempting to have admitted evidence of Sardina's violent propensity. However, instead of using a relevance argument, Gonzalez tries to use the argument that his confrontation rights were violated. They were not.

9

Sardina was not a witness against Gonzalez; he was the deceased victim. Even if Sardina's entire criminal history had been admitted, Gonzalez would not have been able to confront Sardina. The suppression of Sardina's criminal history did not violate Gonzalez' confrontation rights under the Sixth Amendment.

Additionally, Gonzalez argues that because his counsel did not have access to Sardina's battery conviction file, counsel lacked the ability to review it and make an effective relevance argument. He also claims this prevented his counsel from effectively cross-examining witnesses. Gonzalez cites *Marks*, 297 Kan. at 149, to support his argument that he should have been given the opportunity to at least review the battery conviction. However, the test for permitting discovery is "whether it appears reasonably calculated to lead to the discovery of admissible evidence." *Jones v. Bordman*, 243 Kan. 444, 455, 759 P.2d 953 (1988). From the record, it appears that trial counsel had the opportunity to review Sardina's criminal history. Gonzalez does not make a showing of what admissible evidence an examination of the battery case file would have provided. Therefore, without this showing, it cannot be concluded that Gonzalez should have been allowed to view the battery case file. And because Gonzalez cannot show that his counsel should have been allowed to view the battery case file, he cannot make a showing that his counsel was ineffective without it.

DID THE STATE COMMIT A *BRADY* VIOLATION
BY WITHHOLDING EXCULPATORY EVIDENCE?

Third, Gonzalez argues that the State's failure to release Sardina's criminal history resulted in a suppression of exculpatory evidence, constituting a violation of *Brady v. Maryland*, 373 U.S. 83, 87, 83 S. Ct. 1194, 10 L. Ed. 2d 215 (1963). Gonzalez requests his conviction be overturned for lack of confidence in the jury verdict and that the case be remanded to the district court with an order to compel the State to produce Sardina's criminal history for incorporation into Gonzalez' defense.

10

In *Brady*, 373 U.S. at 87, the United States Supreme Court held "that the suppression by the prosecution of evidence favorable to an accused upon request violates due process where the evidence is material either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution." The suppression of such evidence is known as a *Brady* violation. "A trial court's determination as to the existence of a *Brady* violation is reviewed de novo with deference to the trial court's findings of fact." *State v. Warrior*, 294 Kan. 484, Syl. ¶ 13, 277 P.3d 1111 (2012).

In determining if the State committed a *Brady* violation, three components are analyzed: "'"The evidence at issue must be favorable to the accused, either because it is exculpatory, or because it is impeaching; that evidence must have been suppressed by the State, either willfully or inadvertently; and prejudice must have ensued."' [Citations omitted.]" *Haddock v. State*, 282 Kan. 475, 506-07, 146 P.3d 187 (2006).

We can easily dispense with Gonzalez' arguments on this point. First, we have already established that Sardina's criminal history was not relevant, meaning such evidence could not have been favorable to Gonzalez. Second, such evidence was not suppressed by the State but properly excluded by the district court on the grounds of being irrelevant. Third, Gonzalez cannot show prejudice because Sardina's criminal history was irrelevant to the issues in the case. There was no *Brady* violation.

DID THE DISTRICT COURT ERRIIN DENYING GONZALEZ IMMUNITY
UNDER K.S.A. 2014 SUPP. 21-5231?

Fourth, Gonzalez argues that he should have been granted immunity from prosecution under K.S.A. 2014 Supp. 21-5231 and that he should have had a separate hearing as to whether he was entitled to immunity.

11

K.S.A. 2014 Supp. 21-5231 provides that "[a] person who uses force which . . . is justified pursuant to K.S.A. 2014 Supp. 21-5222 . . . is immune from criminal prosecution and civil action for the use of such force." K.S.A. 2014 Supp. 21-5222 provides for the defenses of self-defense and defense of a third person.

The sufficiency of the evidence presented at a preliminary hearing to establish probable cause is reviewed de novo. *State v. Anderson*, 270 Kan. 68, 71, 12 P.3d 883 (2000). "We must determine if there is probable cause to believe the defendant may have committed the crime charged. In order to prove probable cause, there must be evidence sufficient to cause a person of ordinary prudence and caution to conscientiously entertain a reasonable belief of the defendant's guilt." *State v. Corbett*, 31 Kan. App. 2d 68, 71, 59 P.3d 1054, *rev. denied* 275 Kan. 966 (2003). This burden is on the State. *State v. Ultreras*, 296 Kan. 828, 845, 295 P.3d 1020 (2013). "[O]nce a defendant raises justified use-of-force immunity before a court, a probable cause determination must also include a determination that the defendant's use of force was not justified under K.S.A. 21-3211 [now codified at K.S.A. 2014 Supp. 21-5222]." 296 Kan. at 844.

Gonzalez relies on this court's recent decision in *State v. Hardy*, 51 Kan. App. 2d 296, 347 P.3d 222 (2015), *petition for rev. filed* April 22, 2015, to allege that he was entitled to a separate evidentiary hearing to determine his entitlement to immunity. This reliance is misplaced. While *Hardy* does state: "[A] district court must conduct an evidentiary hearing on a motion for self-defense immunity, unless the parties otherwise stipulate to the factual record," 51 Kan. App. 2d at 304, it also provides:

> "District courts, therefore, ought to facilitate hearings combining preliminary examinations with claims for self-defense immunity. The Kansas Code of Criminal Procedure permits that sort of judicial efficiency. In light of *State v. Seabury*, 267 Kan. 431, 434-35, 985 P.2d 1162 (1999), a motion for self-defense immunity should be treated as an objection to prosecution, *i.e.*, a challenge to the institution of criminal proceedings

12

against the defendant, governed by K.S.A. 2014 Supp. 22-3208(5). As provided in that statute, a motion objecting to prosecution simply must be determined before trial, consistent with *Jones*' requirement for self-defense immunity claims. Accordingly, a district court has the flexibility to set reasonable, case-specific deadlines for filing motions objecting to prosecution generally or motions for self-defense immunity specifically. See K.S.A. 22-3217 (authorizing district court to hold pretrial conferences as may be necessary to 'promote a fair and expeditious trial'); *State v. Crume*, 271 Kan. 87, 99-100, 22 P.3d 1057 (2001) (consistent with K.S.A. 22-3217, district courts have 'broad authority . . . to consider various matters as may aid in the disposition of the action,' including motion practice); see *State v. Bloom*, 273 Kan. 291, 300, 44 P.3d 305 (2002) (acknowledging district court's use of pretrial conference to set schedule for motions)." 51 Kan. App. 2d at 302-03.

Gonzalez also relies on *Ultreras* to support his position that he should have received a separate probable cause hearing on the merits of his immunity motion. However, the *Ultreras* court specifically stated: "[W]e reach no holdings regarding the procedures by which the immunity defense should be presented to or resolved by the district court." 296 Kan. at 845. A district court has the authority to hold pretrial conferences as may be necessary to "promote a fair and expeditious trial," K.S.A. 22-3217, and there is no requirement that an evidentiary hearing of immunity be a separate hearing. All that is required is that a separate finding of fact be made regarding the applicability of immunity to the defendant. See 296 Kan. at 844; K.S.A. 2014 Supp. 21-5231.

Gonzalez filed his motion for immunity after his initial preliminary hearing. His motion for immunity was heard during a subsequent hearing during which the district court addressed several issues. At this hearing, the State indicated that the evidence it would have presented in a separate immunity hearing was exactly the same as the evidence it presented in the initial preliminary hearing. Gonzalez did not seek to present or proffer any additional evidence. In considering Gonzalez' motion for self-defense

13

immunity, the district judge took note of the evidence presented at the preliminary hearing and of the probable cause finding that Gonzalez' actions were unlawful:

> "[T]he court has reviewed the preliminary hearing in this matter and based on that evidence . . . the motion to dismiss based on immunity is denied. I do find the State has presented probable cause to believe that the defendant was not justified under immunity as to self-defense under 21-5231."

Even assuming a separate hearing was required, Gonzalez received the content of that hearing during his initial preliminary hearing, rendering any deficiencies in the district court's conduct harmless when it later made the specific finding that probable cause existed that immunity was not applicable. Because the district court made a separate finding that there was probable cause to believe Gonzalez was not entitled to immunity based on the evidence previously presented, there was no error and the motion for immunity was properly denied.

WAS THERE SUFFICIENT EVIDENCE TO CONVICT GONZALEZ OF INVOLUNTARY MANSLAUGHTER UNDER K.S.A. 2014 SUPP. 21-5405(a)(1) OR, IN THE ALTERNATIVE, K.S.A. 2014 SUPP. 21-5405(a)(2)?

Fifth, Gonzalez asserts that the State failed to present sufficient evidence to prove each of the alternative means of involuntary manslaughter beyond a reasonable doubt. Specifically, Gonzalez argues the jury was presented with two alternative means by which he allegedly committed involuntary manslaughter, the first under K.S.A. 2014 Supp. 21-5405(a)(1) (recklessly) or, in the alternative, K.S.A. 2014 Supp. 21-5405(a)(2) (in the commission of a felony or misdemeanor enacted for the protection of human life).

Our standard of review is as follows:

14

"'In *State v. Timley*, 255 Kan. 286, 289, 875 P.2d 242 (1994), this Court explained:

"""In an alternative means case, where a single offense may be committed in more than one way, there must be jury unanimity as to guilt for the single crime charged. Unanimity is not required, however, as to the means by which the crime was committed so long as substantial evidence supports each alternative means.'"

"""Because jury unanimity is not required as to the means by which an alternative means crime is committed, unanimity instructions are not required in alternative means cases." [Citation omitted.] Nevertheless, the State must meet a "super-sufficiency of the evidence" requirement, *i.e.*, present sufficient evidence to permit a jury to find each means of committing the crime beyond a reasonable doubt. [Citation omitted.] If the State fails to present sufficient evidence to support each means, reversal is required. [Citation omitted.]'" *State v. Reed*, 302 Kan. 390, 399, 352 P.3d 1043 (2015) (quoting *State v. Newcomb*, 296 Kan. 1012, 1014, 298 P.3d 285 [2013]).

When the sufficiency of evidence is challenged in a criminal case, we review all the evidence in the light most favorable to the prosecution. In determining whether there was sufficient evidence to support a conviction, we will not reweigh the evidence or determine the credibility of witnesses. The conviction will be upheld if we are convinced that a rational factfinder could have found the defendant guilty beyond a reasonable doubt based on that evidence. *State v. Williams*, 299 Kan. 509, 525, 324 P.3d 1078 (2014). It is only in rare cases where the testimony is so incredible that no reasonable factfinder could find guilt beyond a reasonable doubt that a guilty verdict will be reversed. *State v. Matlock*, 233 Kan. 1, 5-6, 660 P.2d 945 (1983).

In supporting his contention that it was impossible to review under which alternative means of involuntary manslaughter the jury convicted him, Gonzalez cites *State v. Prouse*, 244 Kan. 292, 299, 767 P.2d 1308 (1989), where the Kansas Supreme Court stated:

15

"We believe that the proper method to be employed would be to charge the two different alleged means of commission as alternative counts of involuntary manslaughter. This would separate the elements instructions and the verdict forms and enable a reviewing court to determine precisely what the jury found. Further, it would prevent the jury from hybridizing the two means into some means of commission not specified in the statute defining involuntary manslaughter."

While this may be a preferred course of action, such an approach is not required under *Timley*, which was decided after *Prouse* and its progeny. In fact, very recently in *State v. Bolze-Sann*, 302 Kan. 198, 352 P.3d 511 (2015), Bolze-Sann argued that her conviction of involuntary manslaughter either recklessly or while in the commission of a felony lacked sufficient evidence. The *Bolze-Sann* court found that because there was sufficient evidence for both alternative means, there was not an issue with jury unanimity. 302 Kan. at 208. Here, just as in *Bolze-Sann*, the jury convicted Gonzalez of involuntary manslaughter, either recklessly or in the commission of a misdemeanor enacted in protection of human life or safety.

At Gonzalez' trial, the jury was presented with the following elements instruction on involuntary manslaughter:

"To establish this charge, each of the following claims must be proved:
1. The defendant killed Nicholas Sardina.
2. It was done recklessly; or in the commission of a battery.
3. This act occurred on or about the 25th day of February, 2012, in Douglas County, Kansas."

1.      *The act was done recklessly.*

A new definition of recklessness was established by the 2010 recodification of the Kansas Criminal Code. Under the current definition, "[a] person acts 'recklessly' or is

16

'reckless,' when such person consciously disregards a substantial and unjustifiable risk that circumstances exist or that a result will follow, and such disregard constitutes a gross deviation from the standard of care which a reasonable person would exercise in the situation." K.S.A. 2014 Supp. 21-5202(j).

> "According to the Final Report of the Kansas Criminal Code Recodification Commission, the new definition is 'consistent with Kansas *case law*.' (Emphasis added.) See Appendix A, p. 24. The commission did not compare the new statutory definition with the old statutory definition and it did not specify the caselaw it was deemed to have followed." *State v. Hazlett*, No. 109,999, 2014 WL 4916558, at *5 (Kan. App. 2014) (unpublished opinion).

Without attempting to wade into the weeds as to any differences in the meaning of the prior statute, on which the cases cited by the parties rely, with the present statute, we will simply attempt to determine whether Gonzalez' conduct could have been considered reckless under the circumstances presented here.

The jury was instructed:

> "A defendant acts recklessly when the defendant consciously disregards a substantial and unjustifiable risk that a result of the defendant's actions will follow.
> "This act by the defendant disregarding the risk must be a gross deviation from the standard of care a reasonable person would use in the same situation.
> "Use of force in defense of another person does not apply to reckless conduct."

When viewing the evidence in the light most favorable to the State, a rational factfinder could have found Gonzalez guilty beyond a reasonable doubt of killing Sardina recklessly. At trial, Gonzalez testified that he knew hitting someone on the head with anything could be deadly. With this knowledge, Gonzalez hit Sardina in the back of the head with a beer bottle which ultimately caused Sardina's death. Although Gonzalez

17

testified he felt he needed to use such force in defense of Anderson, another party guest testified that it did not appear Anderson needed to be defended. As it is not our role to reweigh the credibility of witnesses, *Williams*, 299 Kan. at 525, we conclude there was sufficient evidence to support a guilty verdict of involuntary manslaughter committed recklessly.

2.      *The act was done during the commission of a battery.*

Battery, a class B person misdemeanor, is a "'misdemeanor that is enacted for the protection of human life or safety'" within the scope of the involuntary manslaughter statute. *State v. Ulland*, 24 Kan. App. 2d 249, 256-57, 943 P.2d 947, *rev. denied* 263 Kan. 890 (1997); K.S.A. 2014 Supp. 21-5405(a)(2). Battery is defined as "[k]nowingly or recklessly causing bodily harm to another person." K.S.A. 2014 Supp. 21-5413(a)(1).

The jury was instructed:

"To establish the charge of battery, each of the following claims must be proved:
    1. The defendant knowingly caused bodily harm to Nicholas Sardina.
    2. This act occurred on or about the 25th day of February, 2012, in Douglas County, Kansas[.]
    "A defendant acts knowingly when the defendant is aware that his conduct was reasonably certain to cause bodily harm."

Gonzalez admitted that he hit Sardina in the back of the head with a beer bottle. This act was corroborated by several other witnesses. He also admitted to knowing that hitting someone on the back of the head with anything could be deadly. Thus, viewing the evidence in the light most favorable to the State, we have no trouble concluding a rational factfinder could have found Gonzalez guilty beyond a reasonable doubt of involuntary manslaughter done in the commission of a battery.

18

As there was sufficient evidence to support a conviction of involuntary manslaughter either recklessly or in the commission of a battery, the requisite super-sufficiency of evidence standard was met to support Gonzalez' conviction of involuntary manslaughter beyond a reasonable doubt.

### DID CUMULATIVE ERROR SUBSTANTIALLY PREJUDICE GONZALEZ AND DENY HIM A FAIR TRIAL?

Finally, Gonzalez argues that because of the alleged errors discussed above he was substantially prejudiced and this prejudice denied him a fair trial. Unfortunately for Gonzalez, "'[c]umulative error will not be found when the record fails to support the errors raised on appeal by the defendant. [Citations omitted.]'" *State v. Novotny*, 297 Kan. 1174, 1191, 307 P.3d 1278 (2013) (quoting *State v. Cofield*, 288 Kan. 367, 378, 203 P.3d 1261 [2009]). When the appellant fails to demonstrate "two or more trial errors not individually reversible, the cumulative error doctrine is inapplicable." *State v. Hilt*, 299 Kan. 176, 200, 322 P.3d 367 (2014). Because we find no errors in Gonzalez' conviction, there is no cumulative error.

Affirmed.