No. 89,658

STATE OF KANSAS, *Appellee,* v. JARAD A. JONES, *Appellant.*

106 P.3d 1

Opinion filed February 18, 2005.

*Michael S. Holland II,* of Holland and Holland, of Russell, argued the cause and was on the brief for appellant.

*Brenda L. Basgall,* assistant county attorney, argued the cause, and *Tom Scott,* assistant county attorney, and *Phill Kline,* attorney general, were on the brief for appellee.

The opinion of the court was delivered by

NUSS, J.: The district court of Ellis County found Jarad A. Jones guilty of driving or attempting to drive a vehicle while having a blood alcohol level greater than .08 in violation of K.S.A. 8-1567(a)(2). Jones appealed, claiming that the district court erred by denying his motion to suppress an alleged involuntary preliminary breath test (PBT) and the resultant blood test. The Court of Appeals held that Jones consented to the PBT and affirmed the district court in *State v. Jones,* No. 89,658, unpublished opinion

filed October. 31, 2003. This court granted Jones' petition for review under K.S.A. 20-3018(b).

According to the petition for review, the sole issue on appeal is whether Jones gave voluntary, knowing, and intelligent consent to the search of his deep lung air through the use of a PBT. Under these facts presented, we hold that the State failed to prove that he did. Accordingly, we reverse the Court of Appeals and the district court.

## FACTS

Jones and the State submitted the case to the district court on stipulated facts. The following are relevant to the issue on appeal:

"5. That on August 16, 2001, at approximately 11:23 p.m., Officer Mark Windholz of the Hays Police Department responded to work a vehicle accident in the 1400 Block of Ellis Avenue.

"6. Officer Windholz made contact with the driver, Jarad Jones, and observed that the driver had a cut on the side of his head [and] was bleeding, however, Jones refused treatment from the EMS personnel and was released.

"7. Jones confirmed that he was the driver of the vehicle and that nobody else was with him when the accident occurred.

"8. Jones stated that he did not remember exactly what happened to cause him to have the accident, however, Jones did state he felt very tired before the accident.

"9. Officer Windholz conducted no field sobriety testing other than a preliminary breath test [PBT].

"10. Officer Windholz properly conducted his 15 minute deprivation period and properly conducted the [PBT] on defendant.

"11. The parties stipulate [Jones] was not free to leave at this time, that Officer Windholz was detaining him as part of his investigation, that Officer Windholz read [Jones] the statutory warnings under K.S.A. 8-1012, and it was not until after reading [Jones] the statutory warnings that [Jones] did submit to the preliminary breath test.

"12. That a preliminary breath test requires a sample of deep lung air which can only be extracted from defendant after defendant forcibly blows air into the PBT device for a period of three to five seconds.

"13. The parties stipulate that deep lung air is not normally held out to the public and must be extracted by forcing the individual to blow into the PBT device for between three to five seconds.

"14. The PBT test result indicated a breath alcohol greater than 0.08 and Officer Windholz then placed [Jones] under arrest for driving under the influence.

"15. The parties stipulate and agree that absent the preliminary breath test results, the Officer did not have probable cause to believe that [Jones] was driving under the influence, a violation of K.S.A. 8-1567, further, the parties [stipulate] that if the preliminary breath test search did not violate [Jones'] Fourth Amendment rights, that the Officer did possess probable cause to place [Jones] under arrest for driving under the influence.

"16. After being arrested, [Jones] was transported by Officer Windholz to Hays Medical Center where he submitted to a blood test.

"17. The parties stipulate that Officer Windholz complied with Kansas Department of Health and Environment protocol, the Implied Consent Law as prescribed in K.S.A. 8-1001 *et seq.*, and that the blood sample was properly drawn and submitted to the KBI Lab for testing.

"18. The parties further stipulate that the blood test sample was taken within two hours of the last time [Jones] drove or attempted to drive a vehicle and revealed a blood alcohol content of 0.14 grams for 100 milliliters of blood."

On July 1, 2002, Jones filed a motion to suppress the results of the PBT and the subsequent blood test. He asserted that he did not voluntarily, knowingly, or intelligently give consent for the PBT and that his Fourth Amendment rights were violated. On July 16, 2002, the district court concluded that, based upon the stipulated facts and the law, the PBT results were admissible and the arrest was lawful, which led to a finding that Jones was guilty of driving under the influence in violation of K.S.A. 8-1567(a)(2).

Jones appealed to the Court of Appeals, which held Jones had given consent when he stipulated that Officer Windholz had complied with the statutory procedure set forth in K.S.A. 8-1012. It upheld the district court.

## ANALYSIS

Issue: *Did Jones give voluntary, knowing, and intelligent consent to the search of his deep lung air through the use of a PBT?*

Generally, when reviewing a motion to suppress evidence, an appellate court reviews the factual underpinnings of a district court's decision " 'by a substantial competent evidence standard and the ultimate legal conclusion drawn from those facts by a de novo standard. An appellate court does not reweigh the evidence. The ultimate determination of the suppression of the evidence is a legal question requiring independent appellate review.' " *State v. Horn,* 278 Kan. 24, 30, 91 P.3d 517 (2004) (quoting *State v. Men-*

*dez,* 275 Kan. 412, 416, 66 P.3d 811 [2003]). In this case, however, where submitted on stipulated facts, we only examine the question of whether to suppress, a question of law over which this court has unlimited review. Moreover, the issue on appeal raises questions of statutory interpretation upon which our review also is unlimited. *State v. Gray,* 270 Kan. 793, 796, 18 P.3d 962 (2001).

We begin our review of the propriety of the denial of the motion to suppress by examining K.S.A. 8-1012, the statutory basis for administering the PBT. It provides:

"A law enforcement officer may request a person who is operating or attempting to operate a vehicle within this state to submit to a preliminary screening test of the person's breath to determine the alcohol concentration of the person's breath if the officer has reasonable grounds to believe that the person: (a) Has alcohol in the person's body; (b) has committed a traffic infraction; or (c) has been involved in a vehicle accident or collision. At the time the test is requested, the person shall be given oral notice that: (1) There is no right to consult with an attorney regarding whether to submit to testing; (2) refusal to submit to testing is a traffic infraction; and (3) further testing may be required after the preliminary screening test. Failure to provide the notice shall not be an issue or defense in any action. The law enforcement officer then shall request the person to submit to the test. Refusal to take and complete the test as requested is a traffic infraction. If the person submits to the test, the results shall be used for the purpose of assisting law enforcement officers in determining whether an arrest should be made and whether to request the tests authorized by K.S.A. 8-1001 and amendments thereto. A law enforcement officer may arrest a person based in whole or in part upon the results of a preliminary screening test. Such results shall not be admissible in any civil or criminal action except to aid the court or hearing officer in determining a challenge to the validity of the arrest or the validity of the request to submit to a test pursuant to K.S.A. 8-1001 and amendments there. Following the preliminary screening test, additional tests may be requested pursuant to K.S.A. 8-1001 and amendments thereto."

Jones concedes that the language of the statute expressly authorized Officer Windholz to request him to perform a PBT because he had been involved in a vehicle accident. He disputed the admissibility of the PBT results, however, for the reasons set forth in his brief to the Court of Appeals. First, he asserted that the PBT requires him to provide deep lung air which, because it infringes upon his privacy, constitutes a search that is subject to the protections of the Fourth Amendment to the United States Constitution.

Second, since the PBT is a search, it cannot be administered absent probable cause or his consent. Third, his mere involvement in a vehicle accident does not, without more, constitute probable cause to believe he was operating the vehicle under the influence of alcohol; thus, this provision in K.S.A. 8-1012 justifying the search is unconstitutional. See *Gross v. Kansas Dept. of Revenue*, 26 Kan. App. 2d 847, 849, 994 P.2d 666, *rev. denied* 269 Kan. 932 (2000) (Probable cause is synonymous with the statutory term "reasonable grounds."). Fourth, his "consent," if any, was involuntary. If he refused, he would have been issued a traffic citation per the statute. Moreover, the State failed to demonstrate he did more than merely acquiesce to authority.

We hold that (1) taking Jones' deep lung air is a search requiring, under these circumstances, Jones' consent; (2) the State did not meet its burden of establishing that Jones' consent to this search was voluntarily, knowingly, and intelligently given; and (3) the State did not meet its burden of establishing that Jones' consent was impliedly given. Since the parties stipulate that absent the PBT results Officer Windholz did not have probable cause to believe Jones was driving under the influence, and since addressing that factual stipulation is unnecessary to resolving this appeal, we will not consider Jones' accompanying argument, *i.e.*, whether parts of K.S.A. 8-1012 are unconstitutional.

*Search*

The Fourth Amendment to the United States Constitution provides:

"The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized."

A "search" occurs when an expectation of privacy that society is prepared to consider reasonable is infringed. A "seizure" of property occurs when there is some meaningful interference with an individual's possessory interests in that property. *United States v.*

*Jacobson,* 466 U.S. 109, 113, 80 L. Ed. 2d 85, 104 S. Ct. 1652 (1984).

In *Skinner v. Railway Labor Executives' Assn.,* 489 U.S. 602, 616-17, 103 L. Ed. 2d 639, 109 S. Ct. 1402 (1989), the Supreme Court held: "Subjecting a person to a breathalyzer test, which generally requires the production of alveolar or 'deep lung' breath for chemical analysis, . . . implicates similar concerns about bodily integrity and, like the blood-alcohol test . . . considered in *Schmerber* [*v. California,* 384 U.S. 757, 16 L. Ed. 2d 908, 86 S. Ct. 1826 (1966)], should also be deemed a search. [Citations omitted.]"

The parties stipulated that a PBT requires a sample of deep lung air which can only be extracted from a person after the person forcibly blows air into the PBT device for a period of 3 to 5 seconds and that deep lung air is "not normally held out to the public." Jones notes that there are devices used in other states that detect the presence of alcohol by holding the device in the area where a person is breathing normally. It would be overbroad to declare that all PBT's are searches. It is clear, however, that the particular PBT used on Jones tested his deep lung breath for chemical analysis and, under *Skinner,* was a search subject to the strictures of the Fourth Amendment.

*Express Consent*

Unreasonable searches and seizures are constitutionally prohibited and, unless a search falls within one of a few exceptions, a warrantless search, as in the instant case, is per se unreasonable. *Horn,* 278 Kan. at 31 (citing *Mendez,* 275 Kan. at 420-21). Moreover, the exclusionary rule prohibits the admission of the "fruits" of illegally seized evidence, *i.e.,* any information, object, or testimony uncovered or obtained, directly or indirectly, as a result of the illegally seized evidence or any leads obtained therefrom. *Horn,* 278 Kan. at 31 (citing *Mendez,* 275 Kan. at 421).

While a warrantless search was performed in the instant case, the State argues that the search was valid under the consent exception to the search warrant requirement. See *Mendez,* 275 Kan. at 421. Jones responds that he did not voluntarily give his consent

to the search. While he may waive the requirement of a search warrant or may consent to a search without a warrant, the State has the burden to show such consent or waiver is voluntarily, intelligently, and knowingly given. See *State v. Rexroat*, 266 Kan. 50, 54-55, 966 P.2d 666 (1998). The State must prove voluntariness by a preponderance of the evidence, and the existence and voluntariness of a consent to search and seizure is a question of fact that the trier of fact must decide in light of the totality of the circumstances. 266 Kan. at 54-55. See *Ohio v. Robinette*, 519 U.S. 33, 39-40, 136 L. Ed. 2d 347, 117 S. Ct. 417 (1996).

While *Rexroat* also stated that the "voluntariness of consent" determination will not be overturned on appeal unless clearly erroneous, that particular language of review is disapproved; questions of fact are reviewed in Kansas under a substantial competent evidence standard. As support for its statement, *Rexroat* had cited cases whose predecessors stemmed from a case in the Tenth Circuit Court of Appeals, *White v. United States*, 444 F.2d 724, 726 (10th Cir. 1971), which correctly used the federal appellate standard for factual review, *i.e.*, clearly erroneous. See Fed. R. Civ. Proc. 52.

The instant case was submitted on stipulated facts, but the trial court made no findings on the specific issue of consent. Whether the facts support a voluntary consent is therefore for our determination.

The Court of Appeals in this case found that Jones' consent could be inferred from his stipulation of compliance with K.S.A. 8-1012 and that Officer Windholz' giving notice of the PBT warning advisories did not make Jones' consent involuntary. *Jones*, Slip op. at 4. We disagree with this finding of inferred consent through K.S.A. 8-1012. Our disagreement renders the Court of Appeals' latter finding moot.

The stipulated facts provide little detail about the events between the request for Jones to submit to the PBT and the administration of the PBT. The facts do reveal that the statutory PBT warnings of K.S.A. 8-1012 were read, that Jones was not free to leave, and that Jones "did submit" to the PBT. The State bears the burden of showing by a preponderance of the evidence that the

consent was voluntary; it failed to do so here. Under the scant facts in the stipulations, Jones' mere acquiescence to the PBT does not establish voluntary consent. Contrast *City of Kingman v. Lubbers*, 31 Kan. App. 2d 426, 429, 65 P.3d 1075, *rev. denied* 276 Kan. 967 (2003), where the Court of Appeals held: "In the present case, [Officer] Woodson correctly advised Lubbers of the consequence of refusing the request to take a preliminary breath test. *And the record contains ample evidence that Lubbers freely consented to the procedure.*" (Emphasis added.)

As the Court of Appeals stated in another consent to search case, *State v. Kriegh*, 23 Kan. App. 2d 935, 941, 937 P.2d 453 (1997):

"As noted above, consent 'must be given voluntarily, intelligently, and knowingly.' *Johnson*, 253 Kan. at 362. '[I]t must be clear that the search was permitted or invited by the individual whose rights are in question without duress or coercion.' *Crowder*, 20 Kan. App. 2d at 120. 'To be voluntary, the defendant's consent must be " 'unequivocal and specific.' " ' *State v. Henry*, 14 Kan. App. 2d 416, 420, 792 P.2d 358, *rev. denied* 247 Kan. 706 (1990).

" 'In determining whether consent was voluntary, the trial court should consider whether the individual was threatened or coerced, and whether he was informed of his rights.' *Ruden*, 245 Kan. at 105; *cf. Schneckloth v. Bustamonte*, 412 U.S. 218, 248-49, 36 L. Ed. 2d 854, 93 S. Ct. 2041 (1973) (holding that a defendant's knowledge of the right to refuse to consent is not a requirement for a valid consent, but is a factor to be considered).

" 'Mere submission to lawful authority does not equate to consent, rather valid consent must be unequivocal and specific, and freely and intelligently given.' *U.S. v. Manuel*, 992 F.2d 272, 275 (10th Cir. 1993) (citing *Florida v. Royer*, 460 U.S. 491, 497, 75 L. Ed. 2d 229, 103 S. Ct. 1319 [1983]); *cf. Johnson*, 253 Kan. at 362-63."

In short, the State failed to prove by a preponderance of the evidence that Jones unequivocally, specifically, freely, and intelligently consented to the search of his deep lung air and did not merely submit to lawful authority.

### Implied Consent under K.S.A. 8-1001

In Jones' petition for review, and again at oral argument, he offhandedly asserted that the implied consent provisions of K.S.A. 8-1001 could not supply the necessary consent for PBT testing in the instant case. The State filed no response to the petition but summarily disagreed with Jones' assertion at oral arguments. Al-

though neither side briefed the issue, we will address it. See *State v. Coleman,* 271 Kan. 733, 735, 26 P.3d 613 (2001) (newly asserted theory involves only a question of law arising on proved or admitted facts and which is finally determinative of the case).

K.S.A. 8-1001, states in relevant part at subsection (a):

"Any person who operates or attempts to operate a vehicle within this state is deemed to have given consent, subject to the provisions of this act, to submit to one or more tests of the person's blood, breath, urine or other bodily substance to determine the presence of alcohol or drugs. The testing deemed consented to herein shall include *all* quantitative and qualitative tests for alcohol and drugs." (Emphasis added.)

The PBT is a general test for alcohol; accordingly, at first blush the implied consent provisions from 8-1001 would appear to apply to Jones' situation. For a number of reasons, however, we hold that they do not.

We begin our analysis with a review of *State v. Gray,* 270 Kan. at 798, where we stated: "It must be recognized that the tests which may be requested under K.S.A. 1999 Supp. 8-1012 [PBT] and K.S.A. 1999 Supp. 8-1001 [implied consent] are completely separate in purpose, usage, and legal effect."

We then proceeded to discuss a number of the fundamental differences between the two. We recognized that on the one hand:

"The applicable portions of K.S.A. 1999 Supp. 8-1012 state that if a person submits to the test when requested, the results of a PBT 'shall be used for the purpose of assisting law enforcement officers in determining whether an arrest should be made and whether to request the tests authorized by K.S.A. 8-1001 and amendments thereto. A law enforcement officer may arrest a person based in whole or in part upon the results of a preliminary screening test.'

"K.S.A. 1999 Supp. 8-1012 additionally states: 'Refusal to take and complete the test as requested is a traffic infraction.' [subject to fine]

"The recent case of *Gross v. Kansas Dept. of Revenue,* 26 Kan. App. 2d 847, Syl. ¶ 2, 994 P.2d 666 (2000), discusses the usage of a PBT as 'an unobtrusive test given in conjunction with other field sobriety tests to determine probable cause to arrest for driving under the influence.'

"The results of a PBT have greatly limited application in that they are 'not admissible in any civil or criminal action except to aid the court or hearing officer in determining a challenge to the validity of the arrest or the validity of the request to submit to a test pursuant to K.S.A. 8-1001 and amendments thereto.' K.S.A. 1999 Supp. 8-1012." 270 Kan. at 798-99.

We recognized that on the other hand, however,

"[t]he extensive provisions of K.S.A. 8-1001 *et seq.* allow the evidentiary testing of individuals who have been arrested for DUI or involved in a vehicle accident. The Kansas Implied Consent statutes require that the person to be tested be given the oral and written notices set forth in K.S.A. 1999 Supp. 8-1001(f)(1). After compliance with statutory requirements, if a test is administered with results over the specified legal limit, or if a test is refused, a person's driving privileges are subject to suspension and restrictions as provided in K.S.A. 1999 Supp. 8-1002 and K.S.A. 1999 Supp. 8-1014. Test results are admissible in evidence at any trial, as are test refusals. [See K.S.A. 8-1005]. Pursuant to K.S.A. 1999 Supp. 8-1013(h) and (i), the definitions of 'test failure' and 'test refusal' clearly do not include the PBT for purposes of evidentiary alcohol testing under the implied consent statutes." 270 Kan. at 799.

In addition to the differences discussed by the *Gray* court, we observe two others of significance, both of which concern pretesting requirements in the two statutes.

First, we examine pretest warnings. K.S.A. 8-1001(f) states in relevant part:

"Before a test or tests are administered under this section, the person shall be given oral and written notice that: (A) Kansas law requires the person to submit to and complete one or more tests of breath, blood or urine to determine if the person is under the influence of alcohol or drugs, or both."

Subsection (f) then lists eight additional required elements of the oral and written warnings. See K.S.A. 8-1001(f)(B)-(I).

By contrast, K.S.A. 8-1012 requires only a three-part, oral warning before the PBT administration:

"At the time the test is requested, the person shall be given oral notice that: (1) There is no right to consult with an attorney regarding whether to submit to testing; (2) refusal to submit to testing is a traffic infraction; and (3) further testing may be required after the preliminary screening test."

We acknowledge that two of these pre-PBT warnings are similar to those in K.S.A. 8-1001, *i.e.*, K.S.A. 8-1001(f)(C) (no right to consult with an attorney regarding whether to submit to testing) and K.S.A. 8-1001(f)(D) (refusal to submit to testing carries a consequence). Nevertheless, the additional seven elements in the warnings of 8-1001, some of which are discussed in *Gray,* evidence

that the legislature meant for the two tests to be markedly different, *i.e*, "separate in purpose, usage, and legal effect." 270 Kan. at 798.

Second, we examine additional law enforcement predicates to testing under the statutes. K.S.A. 8-1001(b) requires the establishment of two of those listed, stating in relevant part:

"A law enforcement officer shall request a person to submit to a test or tests deemed consented to under subsection (a)[implied consent provision] if [First] the officer has reasonable grounds to believe the person was operating or attempting to operate a vehicle while under the influence of alcohol or drugs, or both, or to believe that the person was driving a commercial motor vehicle, as defined in K.S.A.8-2,128, and amendments thereto, or was under the age of 21 years while having alcohol or drugs in such person's system, and [Second] one of the following conditions exists: (1) the person has been arrested or otherwise taken into custody for any offense involving operation or attempted operation of a vehicle while under the influence of alcohol or drugs, or both, or for a violation of K.S.A. 8-1567a, and amendments thereto, or involving driving a commercial motor vehicle, as defined in K.S.A. 8-2,128, and amendments thereto, while having alcohol or other drugs in such person's system, in violation of a state statute or a city ordinance; or (2) the person has been involved in a vehicle accident or collision resulting in property damage, personal injury or death."

By contrast, K.S.A. 8-1012 provides that only one of three possible predicates to PBT testing need be established, *i.e.*, "if the officer has reasonable grounds to believe that the person: (a) Has alcohol in the person's body; (b) has committed a traffic infraction; or (c) has been involved in a vehicle accident or collision."

These marked differences between the statutes further evidence that the legislature meant for the tests to be "completely separate in purpose, usage, and legal effect." *Gray*, 270 Kan. at 798.

Finally, and most persuasive, is the language in K.S.A. 8-1001(b), which provides that if a law enforcement officer can establish two of the listed predicates, then the "officer shall request a person to submit to a *test or tests deemed consented to under subsection (a)*." (Emphasis added.) By contrast, 8-1012 contains no implied consent language. Accordingly, if an officer establishes only the minimum of one of the predicates for testing listed in 8-1012, he or she cannot request that the vehicle operator be tested via the implied consent provisions contained in 8-1001(a); application of the im-

plied consent provisions requires meeting two predicates in 8-1001(b).

We conclude that because of the substantial differences discussed in *Gray* and here, the clear language of 8-1001(b), and the absence of implied consent language in 8-1012, the implied consent provisions of K.S.A. 8-1001 do not apply to the administration of PBT's.

We also observe that without the PBT results, the State did not meet the predicates from 8-1001 that would permit the subsequent blood test. The State met the requirement of a vehicle accident resulting in personal injury but failed to meet the other, *i.e.*, the officer had no reasonable grounds to believe the person was operating or attempting to operate a vehicle while under the influence of alcohol or drugs, or both. The officer had performed no field sobriety tests and had made no observations suggesting alcohol use such as Jones' physical characteristics or confession to alcohol consumption. Contrast *State v. Chacon-Bringuez*, 28 Kan. App. 2d 625, 18 P.3d 970, *rev. denied* 271 Kan. 1038 (2001) (In addition to PBT results showing breath sample over legal limit, odor of alcohol was on defendant's breath, eyes were bloodshot and watery, he confessed to alcohol consumption, 9 beers were left in 12-pack box in the truck, and defendant had problems performing field sobriety tests.). Here, the officer's "reasonable grounds to believe" were based entirely upon the PBT, which we hold was involuntarily performed by Jones.

Accordingly, under both the express and implied consent scenarios in the instant case, the results of the PBT were not admissible. Whether characterized as the result of failure to meet the requirements for testing under K.S.A. 8-1001 or as fruit of the poisonous tree, the subsequent blood test results were also inadmissible. Without this evidence, the conviction cannot stand.

The decisions of the Court of Appeals and the district court are reversed.